GEORGE FRANKLIN SMITH, Appellant, *vs.* THE DEPARTMENT OF REGISTRATION AND EDUCATION *et al.*, Appellees.

*Opinion filed June 4, 1952.*

ALBERT W. DILLING, and KIRKPATRICK W. DILLING, both of Chicago, for appellant.

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This is a proceeding based upon the provisions of the Administrative Review Act (Ill. Rev. Stat. 1949, chap. 110, pars. 264-279, incl.,) to review the findings and the decision of the Department of Registration and Education which, through its Director, adopted the findings and recommendation of the Medical Examining Committee and revoked the license of George Franklin Smith to practice medicine in all of its branches in the State of Illinois. A complaint for review was filed in the superior court of Cook County where, after many sessions, the revocation order was affirmed by that court and the appeal therefrom brings the case here.

On March 8, 1950, Lucy Boehne, of Evansville, Indiana, one of appellant's patients, filed a sworn complaint against Dr. Smith with the Department of Registration and Education charging violation of the Medical Practice Act. Pursuant thereto, a citation was issued by the Director of the administrative agency addressed to appellant, and with it a copy of the complaint was served upon the appellant on March 11, 1950. Therein a date for the hearing on said charges was fixed for April 13, 1950, and appellant was directed to file his sworn answer to the complaint within twenty days or by March 31, 1950. By stipulation, the time for answering or otherwise pleading was extended

to April 12, 1950, and on that date appellant filed a sworn motion to dismiss the citation and complaint and also filed a sworn petition for the disqualification of the medical committee which had been appointed by the Director to hear the charges. Subsequently, on April 25, 1950, appellant filed his supplemental affidavit in support of the disqualification petition, detailing further charges of bias and prejudice against said medical committee.

The appellant was accorded a hearing before the medical committee on May 3, 1950, on his motion to dismiss the citation and complaint and his petition for disqualification of the medical committee. On the same date both the motion and petition were denied. Thereupon appellant was granted until May 13, 1950, within which to file his sworn answer to the complaint, and the hearing on the charges was set for May 18, 1950. Immediately thereafter, appellant sought, in strict compliance with applicable statutes, to take the prehearing deposition of Lucy Boehne, the complainant, at her home in Evansville, Indiana, on May 17, 1950, and presented his application for a *dedimus potestatem* to the Director on May 16, 1950. The Director, however, refused to issue the *dedimus potestatem*. On May 13, 1950, appellant filed his sworn answer to the complaint with the Director of the Department of Registration and Education.

On May 17, 1950, appellant unsuccessfully undertook to obtain a temporary injunction in the circuit court of Cook County, cause No. 50C4848, to restrain the Director of the administrative agency, its counsel, the members of the medical committee and their attorneys from proceeding with the hearing on the complaint scheduled for May 18, 1950.

On May 18, 1950, the counsel for appellant appeared before the medical committee solely to plead that the hearing on the complaint be continued so that appellant might take depositions necessary to his defense and in particular he might accomplish a prehearing deposition of the com-

plaintant, Lucy Boehne. This was promptly denied. Whereupon, appellant and his counsel left the hearing room and refused to return and participate in the trial. The medical committee then proceeded with the hearing on the complaint in the absence of appellant and his counsel. A number of witnesses were heard, including the complainant. Upon its conclusion, the committee took the matter under advisement.

Thereafter, on August 12, 1950, the appellant was notified that the medical committee had recommended revocation of his license to practice medicine in all of its branches and that the recommendation had been approved by the Director of the administrative agency and its superintendent of registration.

September 15, 1950, appellant sent to the Director by registered mail, his motion for rehearing. On November 8, 1950, a supplemental motion for rehearing was mailed to the Director. November 20, 1950, all of the motions for rehearing were denied by the Director, and on January 5, 1951, the administrative agency sent to appellant a copy of the revocation order executed by the Director revoking appellant's license to practice medicine in Illinois, with a copy of the report, findings and recommendation of the medical committee.

The appellant filed in the superior court of Cook County, in cause No. 51S2337 on February 8, 1951, a complaint for review of said final administrative decision and praying that said revocation order might be reversed. Subsequently, on March 19, 1951, the court entered its order affirming the administrative decision and filed therewith a written opinion.

As we have heretofore indicated, the medical committee elected to proceed with the hearing on the charges against appellant on May 18, 1950, in the absence of the doctor and his counsel. The administrative agency called five witnesses, to-wit, Mrs. Lucy Boehne, the complainant, and

her husband Edward J. Boehne, Dr. Thomas B. Bondus, Kate Edison, and Dr. M. Alice Phillips. One of the principal contentions made by appellant on this appeal is that the administrative agency made findings of fact which were not supported by the evidence. Consequently, it becomes necessary for us to recite rather fully in this opinion the testimony of the several witnesses in the *ex parte* hearing.

Mrs. Lucy Boehne testified that she visited the appellant's office on May 9, 1949, because she had not been well for quite sometime and had become ill while visiting in Chicago; that after she disclosed her symptoms to appellant he gave her certain tests and a general physical examination; that the next day he reported to her that she had a malignant tumor the size of a large hen egg; that he also told her that she would have no occasion to worry because he would administer the "Koch Treatment" which was an absolute cure; and that he told her she had fistules and later performed an operation removing them. Mrs. Boehne further testified that during the second week of her experience with Dr. Smith he told her "since you are the mother of three children, at least one out of the three will be a positive case," and he recommended that all three of the children should "by all means have the test, and if they show positive they should have the 'glyoxylide' injection because that would keep them from having cancer;" that appellant suggested that she see Dr. Bondus, and she visited him twice, and he failed to find a tumor; that she visited appellant's office first every day then later three times a week and then after that twice a week. She also testified that her husband and their children each received an urinalysis and blood test; that appellant announced that the "baby was a positive and should by all means have a one-third injection so that she would never have cancer;" that the second child had moles and was negative "but that they could turn cancerous;" that the third child was nega-

tive but would be helped by the "Koch Treatment;" and that he recommended that her husband receive an injection of glyoxylide for "that would keep him from ever having cancer." Her testimony further revealed that appellant suggested that she go to the Cancer Prevention Center to check on his diagnosis in addition to her seeing Dr. Bondus. There were exhibits in evidence indicating that the Boehne family had paid appellant the sum of $585. This bill covered many series of allergy tests, all office calls, injections and operations covering a period of several months.

Mr. Boehne testified that on May 11, 1950, appellant told him that Mrs. Boehne was very sick, and that she had a malignant tumor about the size of a hen egg, but that she should not have to worry because the "Koch Treatment" would take care of her, that she should have colonic irrigations and allergy tests, that she was very toxic which accounted for her being emotionally upset and her sleepiness, and that she was very anemic; and that appellant suggested to him that the children should be examined as a precautionary measure, that the youngest child was a "cancerous candidate and all should have the shot that it would kill the infection," and that the shot he referred to was "what goes with the 'Koch Treatment,' glyoxylide." Dr. Bondus testified that he was a physician and surgeon, duly licensed to practice medicine in the State of Illinois and had done so for a quarter of a century; that he had examined Mrs. Boehne at the request of appellant; that he told her she had a small fibroid tumor of the uterus; that on one of his examinations it was disclosed that Mrs. Boehne had bleedings and once bled for two weeks and passed heavy blood clots; that it was debatable as to whether or not such bleeding was due to fibroid or something else; that he found no malignant tumor on his examinations but that she could have had one and he did not find it. Kate Edison and Dr. M. Alice Phillips both testified that they are associated with the Cancer Prevention

Center of Chicago; and they were visited by Mrs. Boehne June 6, 1949; that they did not find present at that time a cancer, but Dr. Phillips said that she could have had a cancer but she did not discover it. In response to a question as to whether or not she could tell from the record whether complainant was suffering from a cancer at that time she replied: "I can only say we did not find one."

It is claimed by appellant upon this appeal that the final administrative decision of the Department of Registration and Education revoking his license to practice medicine in the State of Illinois should be reversed for the following reasons: (1) That he was denied by said administrative agency the equal protection of the laws, guaranteed to him by section 1 of amendment XIV to the constitution of the United States; (2) that he had been denied a fair and impartial hearing of the charges against him before an unbiased and unprejudiced medical committee, which denial constituted a denial of that due process of law guaranteed by section 2 of article II of the constitution of the State of Illinois and amendments V and XIV of the constitution of the United States; (3) that he was denied a right to take complainant's prehearing discovery deposition which thus prevented his properly preparing his defense; (4) that the evidence adduced at the hearing on May 18, 1950, does not support the findings of the medical committee upon which its recommendation that appellant's license be revoked was based; (5) that he was prejudiced by the arbitrary refusal of the Director to allow his motion for continuance made on May 18, 1950. There are other assignments of error, but it is not necessary to detail them, for in the main they appear to be variations of the five we have outlined above.

Section 1 of amendment XIV of the constitution of the United States reads in part as follows: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall

any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law." The United States Supreme Court in interpreting this section in the case of *Ex parte Virginia,* 100 U.S. 339, said: "We have said the prohibitions of the Fourteenth Amendment are addressed to the States. They are, 'No State shall make or enforce a law which shall abridge the privileges or immunities of citizens of the United States, . . . nor deny to any person within its jurisdiction the equal protection of the laws.' They have reference to actions of the political body denominated a State, by whatever instruments or in whatever modes that action may be taken. A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provisions, therefore, must mean that no agency of the State, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a State government, deprives another of property, life, or liberty, without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; * * *."

A case which represents one of the landmarks in this area of constitutional guaranty is *Yick Wo* v. *Hopkins,* 118 U.S. 356. The court, at page 373, said: "Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution."

It was with some difficulty that appellant was able to obtain from the Department of Registration and Education the records that revealed the following facts: That

at the time the case under consideration was pending, the administrative agency was entertaining two separate and distinct proceedings against one Dr. Peter B. Schyman, seeking to revoke his license to practice medicine in the State of Illinois for alleged violation of the Medical Practice Act. Those cases were entitled People of the State of Illinois *ex rel.* Marjorie Taylor v. Dr. Peter B. Schyman, and People of the State of Illinois *ex rel.* Charlotte Hermes v. Dr. Peter B. Schyman. In each of those proceedings Dr. Schyman filed a petition in the nature of a motion for a change of venue reciting that he was fearful that he would not receive a fair and impartial trial because the members of the committee were prejudiced against him. The identical medical committee functioning in this cause promptly disqualified itself in the Schyman cases and appointed a completely new medical committee. The record further discloses that this same committee, while acting unfavorably upon appellant's motion for a continuance and his application for a *dedimus potestatem* to take the prehearing deposition of the complaining witness, acted favorably upon similar motions made by the respondent under similar circumstances in the Schyman cases.

As hereinbefore indicated, it is argued by appellant that the constitution of the United States guarantees to all citizens the equal protection of the laws wherever controversies under consideration involved "similar circumstances." It is undenied that the circumstances surrounding appellant in his cause and the respondent in the two Schyman cases are identical.

Section 2 of article II of the constitution of the State of Illinois reads as follows: "No person shall be deprived of life, liberty or property, without due process of law." A like provision is found in amendment XIV of the constitution of the United States. It has been universally held that a license to practice medicine is a "property right," within the meaning of the constitutional guarantees of due

process of law. In the case of *People* v. *Love,* 298 Ill. 304, the court said: "The right to follow either one of these professions [physician or lawyer] is one of the fundamental rights of citizenship. A person's business, profession or occupation is at the same time 'property' within the meaning of the constitutional provision as to due process of law." (*People* v. *Brown,* 407 Ill. 565, 95 N.E. 2d 888.) Due process of law presupposes a fair and impartial hearing before a fair and impartial tribunal. (*Comrs. of Union Drainage Dist.* v. *Smith,* 233 Ill. 417.) The petition for the disqualification of the medical committee filed by appellant was supported by two separate affidavits which contained many specific allegations of prejudice and bias. They embraced the following charges: The American Medical Association is a moving force behind the proceedings to revoke the license of appellant; that as an organization it has gone on record denouncing the "Koch Treatment for cancer;" and that it has for the past few years entered upon a crusade to "drive all doctors using it out of business;" that in the journal of A.M.A. from 1921 to 1949 there have appeared twenty-one articles viciously condemning the "Koch Treatment;" that the American Medical Association has joined with the public press of Chicago in not only condemning the "Koch Treatment" but in characterizing appellant as the number one quack of Chicago; that one of the members of the present committee is classified in the Chicago Medical Bluebook as a "cancer specialist" and that he, like all adherents of the A.M.A., teaches and prescribes that there are three and only three methods of combating cancer, namely, radium, X ray or surgery; that all five of the members of the present committee not only hold membership in the American Medical Association but that they hold high offices therein and they are active in promoting and furthering the administration of its affairs; that since the American Medical Association has already prejudged the efficacy of the "Koch Treatment," it was

not fair to require him to be tried by a committee, the membership of which is derived entirely from that organization; that he was fearful that he could not receive a fair trial from a group of men who are such important factors in the powerful medical association that is interested in this prosecution; that there are thousands of doctors in Chicago who are not identified with this organization, and that if the membership of this committee is recruited from that group he will more likely receive a fair trial.

It is contended by appellees that the statute does not provide for a change of venue in proceedings of this character. However, the record shows in the Schyman cases that when a charge of prejudice was brought against the committee they immediately appointed another composed of five altogether different members. Defending the action of the medical committee in denying appellant's petition for a change of venue, appellees rely upon the holding in the case of *Brinkley* v. *Hassig,* 83 Fed. 2d 351. Therein it is held that a judge or an officer exercising judicial functions may act in a proceeding wherein he is disqualified by interest or relationship, if his jurisdiction is exclusive and there is no legal provision for calling in a substitute, so that his refusal to act would prevent absolutely a determination of the proceeding. This so-called doctrine of necessity, however, does not apply if there is anyone else who can act in his place. In the case of *State of Alabama ex rel Miller* v. *Aldridge et al.,* as members of Alabama's State Board of Public Accountancy, 212 Ala. 660, the court held there is no such necessity for prompt adjudication of the question of revoking the certificate of a public accountant as to require the sitting of prejudiced persons as judges in the case.

In section 17a of the Medical Practice Act (Ill. Rev. Stat. 1949, chap. 91, par. 16b-1,) appears the following language: "Whenever the Director is satisfied that substantial justice has not been done either in an examination,

or in the suspension or revocation of or refusal to restore a license or certificate of authority, he may order a re-examination or rehearing by the same or other examiners." Charges of prejudice on the part of the committee went undenied and were refuted only to the extent that the attorney for the Department assured appellant that it was his opinion that the committee would be entirely fair. We are of the opinion that the Department was in error in not selecting a different committee to hear the instant case.

We do not even remotely imply by what we have said that Dr. Smith is a model of professional integrity but we must find that he has not been legally convicted of the charges in this complaint. Nor do we intend to say here that the members of the American Medical Association, as such, are partial or prejudiced and incompetent to serve on the Medical Examining Committee in every case involving a practice not recognized or approved by that association. We fully realize that the primary responsibility of protecting the public from illegal and unethical practices in all the professions lies in the associations of the leaders and ethical practitioners in that profession. It is our duty and desire to encourage such associations in this essential work but in doing so we must not ignore the fundamental legal rights of every citizen. Under the special circumstances of this case, it is our opinion that the ends of justice and due process would have been better served if Dr. Smith's request for another hearing agency had been allowed.

The complaint upon which these proceedings are predicated charges, after setting forth the course of treatment that was received by the complaining witness from the respondent: (1) that appellant "has been guilty of holding himself out to the public to treat human ailments by making false statements," and (2) that appellant made "false and untrue claims of his own skill in the treatment of cancer cases," in violation of section 16 of the Medical Practice Act. Nowhere in the complaint is it alleged what, if any,

statements made by appellant were false, nor is it alleged what diagnosis if any, made by the appellant, was fraudulent or unlawful, nor does it specify what claims were made by the appellant as to his skill in treating cancer cases that were false and untrue. Appellant has charged throughout these proceedings that the complaint upon which he was tried is legally insufficient. It has been repeatedly held in this State that the revocation of a license of a professional man carries with it dire consequences. It not only involves necessarily disgrace and humiliation but it means the end of his professional career. In a proceeding so serious, due process of law requires a definite charge, adequate notice, and a full, fair and impartial hearing. (*Kalman* v. *Walsh,* 355 Ill. 341; *Klafter* v. *State Board of Examiners,* 259 Ill. 15; *Schireson* v. *Walsh,* 354 Ill. 40.) In the latter case, on page 45, the court said: "The guilt of any defendant of the charges made in the complaint against him must be established clearly and conclusively by competent evidence before the license of any defendant may be legally revoked. The body hearing the case should be a qualified body without prejudice and strictly impartial as to the issues to be tried."

It is further contended by appellant that the evidence adduced at the hearing conducted on May 18, 1950, was insufficient to support the findings of the administrative agency. Let us turn our attention to the record and examine the findings of the medical committee. Appellant admits that the first five findings are formal and innocuous. Appellant, however, does take exception to that part of paragraph 6 of the "Report of Findings" as follows: "that an examination of that record shows that Mrs. Boehne never had a malignant tumor." The record shows that the doctor from the cancer clinic testified with reference to Mrs. Boehne having a cancer: "I can only say that we did not find one." Paragraph 8 of the committee's finding reads as follows: "The Committee finds from the evidence that Mrs.

Boehne did not have a cancer, had no symptoms that would lead a physician, reasonably skilled in the practice of his profession, to diagnose cancer, and that the respondent's, Dr. George Frank Smith's, diagnosis of cancer was not only false but was either known by him to be false or was made with a reckless and willful disregard as to its truth or falsity. Wherefore, the Committee finds and concludes that the said diagnosis was fraudulent." The record shows that Mrs. Boehne, when she first attended Dr. Smith, complained of unusual and severe menstrual pains; that there were "cysts" removed from her uterus in 1947; that according to the Department's exhibit 5 and complainant's testimony, she had a long history of cancer in her family, to-wit, her paternal great uncle, her paternal great aunt, her paternal grandfather, and her paternal uncle, having all died of cancer. Appellant insists that there was sufficient evidence in the record to indicate many "danger signals" along "the cancer road." The record discloses without contradiction that Dr. Smith sent Mrs. Boehne to Dr. Bondus and to a cancer clinic that they might make an independent diagnosis to either confirm or reject his finding. We are inclined to agree that there is some validity in the argument of appellant and such conduct is not consistent with the attitude of an emperic or charlatan.

The medical committee by its ninth finding states that Dr. Smith acted fraudulently in stating that one of Mrs. Boehne's three children was certain to have cancer and that such a statement was not in accordance with any reputable medical learning. Dr. Smith, in his answer to the complaint, denied making such a statement, but alleges, just as the complaint alleges, that he did say that the children "would be a positive cancer candidate." There is no evidence in the record to sustain the committee's findings that such a statement is not in accordance with reputable medical learning. Of a more serious and troublesome nature is the tenth finding of the medical committee which reads as fol-

lows: "The Committee further finds that the injections given by the respondent, Dr. George Franklin Smith, to Mrs. Boehne, Mr. Boehne, and the three Boehne children, called by the respondent the 'Koch Treatment' and consisting of the administration of glyoxylide, is not in fact, nor is there any reputable medical learning or opinion indicating that it is, either a cure, palliative or preventive of cancer and that the administration thereof is without therapeutic value in cancer cases." It is significant to note that there was not one particle of evidence adduced on this hearing as to the therapeutic value of the "Koch Treatment." The committee further found in the eleventh specification that Dr. Smith had made "false claims as to the efficacy and value of his medicine, treatment and remedy, knowing such statements to be false, within the purview of Paragraph 8, of Section 16 of the Illinois Medical Practice Act." Appellant continuously insists in this review that Mrs. Boehne, when she came to him, was a very very sick woman; that she was afflicted with a cancer; and that when he saw her in and about the hearing room on May 18, 1950, she was vivacious, alert, able-bodied and a picture of health, and he argues with great seriousness that it was his treatment of her that produced the change.

The record is completely silent as to any expert testimony relating to the respondent's professional conduct; or relating to his diagnosis of Mrs. Boehne, whether honest or fraudulent; or relating to the medicinal or therapeutic value of the "Koch Treatment." The medical hearing committee undertook to draw upon their own professional skill and scientific training to produce the findings entered against the respondent herein. As we have heretofore indicated, this cause was reviewed by one of the judges of the superior court of Cook County. At one of its sessions a member of the Attorney General's staff representing the Department made the statement that the "Koch Treatment" was without therapeutic value. The next day the appellant

undertook to call fifteen witnesses who were present in the courtroom and it was asserted they would testify that each one of them had been afflicted with a cancer; that they had received the "Koch Treatment" from Dr. Smith; and that each and every one of them had been cured. Only an offer of this proof was made inasmuch as the statute in these proceedings does not provide for additional evidence on review. Ill. Rev. Stat. 1949, chap. 110, par. 274.

The trial court filed a written opinion herein, stating that the Department had a very weak case and that he was particularly troubled with the total lack of proof to support many of the findings of the medical committee. In arriving at his conclusion that the committee's determination should not be disturbed, he relied upon the case of *Jaffe* v. *State Department of Health,* 135 Conn. 339, 64 Atl. 2d 330, which was decided by the Supreme Court of Errors of Connecticut. It pertained to the revocation of a physician's license, and the court said : "The same principle applies to the medical examining board. Expert opinion of other physicians offered before it could have been disregarded by it, and from a practical standpoint would in all probability have had little, if any, effect in bringing it to a decision at variance with its own conclusion upon the question whether or not the conduct of a practitioner had been compatible with professional standards or whether or not he was competent. With the facts of that conduct before it, the board was competent to determine such questions without hearing expert opinion evidence. * * * So in this case, as we must presume the members of the Board to have been competent to determine the issues upon the basis of their own knowledge and experience, the offer of expert testimony was not necessary." We are of the opinion that the trial court was in error in permitting the holding in the *Jaffe case* to control his determination in this matter. It is well settled in Illinois that an administrative tribunal cannot rely upon its own information for support of its findings.

In the case of *Pullman Co.* v. *Commerce Com.* 390 Ill. 40, at page 46, the court said: "The commission's order must be based upon evidence presented at the hearing. Facts conceivably known to the commission but not put in evidence will not support an order. (*Rockwell Lime Co.* v. *Commerce Com.* 373 Ill. 309." The opinion in *Fleming* v. *Commerce Com.* 388 Ill. 138, cited in the *Pullman case,* contains the following, at page 149: "In *Atchison, Topeka and Santa Fe Railway Co.* v. *Commerce Com.* 335 Ill. 624, we said: 'The commissioners cannot act on their own information. Their findings must be based on evidence presented in the case, with an opportunity to all parties to know of the evidence to be submitted or considered, to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal, and nothing can be treated as evidence which is not introduced as such.' " Of striking applicability is the case of *McKay* v. *State Board of Medical Examiners,* 103 Colo. 305, 86 Pac. 2d 232. The reasoning of the court in this case, arriving at a conclusion just opposite to that in the *Jaffee case,* in our opinion is sound and unanswerable. The Colorado Supreme Court reversed the action of the State Board of Medical Examiners revoking the license of a physician and surgeon to practice. It was charged that he had dispensed narcotics in varying amounts to patients, not to cure or to alleviate certain ailments but to satisfy the addiction of said patients to narcotic drugs in violation of the Harrison Narcotic Drug Act. The court said at page 312: "We call particular attention to the observation made in the foregoing quotation that to determine whether ordinary care was used in diagnosis and treatment 'resort must be had to the opinion of experts.' In the case before us there is no expert testimony disclosed in the record that proves or tends to prove a failure properly to diagnose or to treat the disease of the various persons with respect to whom malpractice was

charged. It is not enough that the board may be composed of experts who applied their knowledge of diagnosis and treatment to the case in which malpractice is alleged. * * * Such determination can be made only on the evidence appearing in the record. Obviously the reviewing court cannot be left to speculate on what was in the minds of the individual board members as constituting improper diagnosis or treatment."

Attorneys for appellees contend that there was no necessity for such proof inasmuch as appellant himself stated from time to time to Mr. and Mrs. Boehne that the American Medical Association had no use for the treatment and regarded it as worthless and not to go to any other doctor because other doctors would not co-operate in its administration. This argument is without much force. As we have indicated heretofore, the revocation of a professional license involves serious consequences, both to the licensee under attack and to the public. The charges must be specific and the proof clear and convincing. If Dr. Smith is dishonest in his practice and if the "Koch Treatment" is without value, it was a simple matter for the Department to have produced such proof. This court possesses neither medical learning nor powers of telepathy. We are, therefore, unable to medically evaluate the testimony in this record or to know what scientific appraisal of it was made by the medical committee.

The judgment entered herein is reversed and the cause remanded to the trial court with directions to refer the matter back to the Department for another hearing not inconsistent with the views herein expressed.

*Reversed and remanded, with directions.*