CHARLES LADENHEIM, Plaintiff-Appellant, *v.* UNION COUNTY HOSPITAL DISTRICT, Defendant-Appellee.

Fifth District   No. 79-13

Opinion filed August 29, 1979.

Earl S. Hendricks, Jr., of Hendricks & Watt, of Murphysboro, for appellant.

R. Corydon Finch, of Anna, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Plaintiff Charles Ladenheim appeals from a judgment of the circuit court of Union County affirming the Union County Hospital District's denial of staff privileges to plaintiff.

On January 9, 1976, plaintiff made his annual application for reappointment to the medical staff of the Union County Hospital District. The medical staff of the district approved the application on March 15, 1976, and recommended that the district's board of directors approve the reappointment.

By letter dated August 27, 1976, plaintiff was informed that the board of directors had disapproved his application, and that he would no longer be allowed to admit patients to the Union County Hospital. Plaintiff immediately filed a complaint in the circuit court to enjoin the hospital district from denying him the use of the hospital facilities until a hearing was conducted to determine his eligibility for a staff reappointment, and on September 20, 1976, the court entered a restraining order against the hospital district. Plaintiff subsequently received a five-page notice of hearing, stating 16 general charges of unprofessional conduct and listing

21 separate incidents which formed the basis for the charges. The incidents were listed in substantial detail, including the time frame and people involved.

On October 11, 1976, a hearing was conducted before the executive committee of the medical and dental staff sitting as the credentials committee, in accordance with the bylaws of the Union County Hospital District. This committee was composed of three members of the staff, including Dr. R. Dr. R. had assisted the hospital's attorney in preparing the written charges against plaintiff. Apparently, his assistance was limited to an interpretation of a memorandum received by him from the director of nurses. Plaintiff's counsel moved to have Dr. R. removed from the committee on the ground that his participation in this phase of the investigation constituted bias. Upon the advice of the hospital attorney, the motion was denied.

Throughout the hearing the hospital attorney elicited witness testimony by first laying a foundation, then asking the witness to describe his or her particular contacts with plaintiff. The hospital attorney also made occasional objections to evidence presented by plaintiff, and advised the chair on procedural and evidentiary rulings. Dr. R. asked several questions of both plaintiff and other witnesses, as did other members of the committee. Plaintiff's counsel and plaintiff himself were allowed to cross-examine all of the witnesses, and plaintiff was given the opportunity to rebut their testimony. All relevant evidence was admitted without the limitations of formal evidentiary rules.

After hearing the evidence, the credentials committee concluded that the following allegations were true: In August 1976, during a dispute over administrative procedures, plaintiff told a physical therapist that she had body odor and repeated the conversation to two other hospital employees. In March 1976, after receiving a bill for laboratory work done on a patient not sufficiently identified to allow direct billing of the patient, plaintiff returned the bill with a note indicating that the business office staff was stupid. In January 1976, plaintiff refused to admit a patient to Union County Hospital, telling a relative of the patient that he was "mad at the hospital." Plaintiff refused to complete a medical planning form titled "Discharge Planning" on a nursing home patient, writing "you dreamer" across the space provided for his input. On several occasions plaintiff made disparaging remarks to or refused to work with a particular nurse, and in one instance told her that an emergency room patient could go to another hospital "or go to hell" as far as he was concerned, because the patient was receiving medical assistance from welfare. Plaintiff refused to bring his criticisms of the nursing staff to the director of nursing, circumventing her entirely in favor of complaining to the hospital administrator. In addition, he indicated to another staff member that it

was useless to request the nursing director's assistance, because she would not take any action. In June of 1975 and in February of 1976, plaintiff refused nurses' requests to come to the emergency room to attend patients. He left standing orders that no nurse was to institute cardio-pulmonary resuscitation on any of his patients until receiving orders from him or another doctor. In May and June of 1976, plaintiff failed to take proper pre- and post-operative measures in the care of a patient who had undergone major abdominal surgery.

On February 24, 1977, the credentials committee submitted its findings to the board of directors of the district, and recommended that the plaintiff's reappointment be denied. Plaintiff thereupon appealed the recommendation and findings to the joint conference committee, a body consisting of the officers of the board of directors and the medical staff. The joint conference committee concurred in the findings and recommendation of the credentials committee.

On June 14, 1977, an appeal was taken to the full medical staff, and plaintiff sought to reopen the hearing before the credentials committee on the grounds that plaintiff had received evidence that one of the witnesses against him had been a narcotics user who stole drugs from the hospital. The motion was denied. The staff approved the actions of the credentials committee. Plaintiff then appealed to the board of directors, who affirmed the findings and recommendation of the credentials committee and denied plaintiff's appointment to the staff of the Union County Hospital.

Plaintiff sought judicial review by writ of *certiorari* in the Union County Circuit Court, alleging that the hearing procedures employed by the Union County Hospital District denied him due process of law, that the charges against him were vague, and that the findings of the credentials committee were against the manifest weight of the evidence. The circuit court upheld the determination of the credentials committee and the action of the district. We affirm.

■■ Appellant first contends that the district violated its own bylaws in the hearing procedure because he initially should have received a hearing before the staff as a whole, rather than before the executive committee sitting as the credentials committee. Article VII, sections 2A(1) and (1)h of the bylaws of the medical staff read as follows:

"Additional duties and/or functions of the Executive Committee shall be:

* * *

To hear appeals on request of an applicant who has been rejected for membership or a staff member whose privileges have been changed. In the event that a suspension or revocation of staff

membership or curtailment or denial of privileges is recommended by the Executive Committee, the practitioner *may request* a hearing before the staff as a whole. If the appeal to the Board [sic] is not favorably resolved, the practitioner may further appeal to the Board. A final decision will be rendered by the Board within a reasonable number of days after this hearing." (Emphasis added.)

Clearly, a hearing before the staff as a whole is available only upon specific request of the applicant, and then only subsequent to the executive committee's decision. We find no such request in this record. Appellant did request that the hearing be reopened to allow him to present evidence which in his opinion tended to discredit certain of the witnesses against him, but at no time did he ask for a de novo hearing before the entire staff.

Appellant next contends that the bylaws of the medical staff are in conflict with the bylaws of the hospital district in that the staff bylaws call for a hearing before the staff as a whole, whereas the district bylaws require a hearing before the credentials committee of the staff. As stated above, a hearing before the staff as a whole is required by the staff bylaws only if the practitioner specifically requests such a hearing. As no request was made here, the issue of the existence of a conflict is moot.

Appellant next contends that he was denied an unbiased tribunal because Dr. R., who had assisted in the preparation of the charges against him, was allowed to sit on the credentials committee during the hearing. Certainly it is well settled that due process requires a fair and unbiased tribunal (*Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011), and an administrative proceeding must conform to the fundamental principle of justice and due process of law. (*Smith v. Department of Registration & Education* (1952), 412 Ill. 332, 106 N.E.2d 722.) However, due process does not require that every member of an administrative tribunal be completely unfamiliar with the factual issues presented at a hearing; the only bias and familiarity which disqualifies a member of the tribunal is that which derives from an extrajudicial source and which results in an opinion on the merits based on something other than that which was learned from participation in the case. Mere involvement in the preliminary procedures required to bring the case to a hearing is not equivalent to unacceptable bias and familiarity. (*Duffield v. Charleston Area Medical Center, Inc.* (4th Cir. 1974), 503 F.2d 512; *Hoberman v. Lock Haven Hospital* (M. D. Pa. 1974), 377 F. Supp. 1178.) In administrative proceedings, combination of investigative and adjudicatory functions does not violate due process unless actual personal bias results and is demonstrated in the record. (*Withrow v. Larkin* (1975),

421 U.S. 35, 43 L. Ed. 2d 712, 95 S. Ct. 1456.) Clearly, Dr. R.'s limited involvement in the preparation of the written charges is not sufficient to raise a presumption of prejudgment and bias, and his participation in the tribunal did not violate appellant's right to due process.

Appellant next contends that the administrative appellate procedure, in which some members of each successive appellate body had been members of the body whose decision was under review, denied him due process. Generally, the final arbiter of issues in dispute should not have participated in making the determination under review. (*Goldberg v. Kelly; Kraut v. Rachford* (1977), 51 Ill. App. 3d 206, 366 N.E.2d 497.) This principle was followed here. Even so, due process is a flexible concept; its requirements vary with the circumstances to which it is applied, because no particular mode of procedure is mandated. *Goldberg v. Kelly; Waupoose v. Kusper* (1972), 8 Ill. App. 3d 668, 290 N.E.2d 903.

■■ In this case appellant received notice, a hearing before an impartial tribunal, representation by counsel, the opportunity to cross-examine witnesses and to present evidence, and the opportunity to inspect documentary evidence against him. Generally, this is considered sufficient to insure due process in administrative proceedings. (*Rutledge v. Department of Registration & Education* (1966), 77 Ill. App. 2d 103, 123, 222 N.E.2d 195.) Moreover, no member of the executive committee sitting as the credentials committee, which made the original recommendation, was a member of the board of directors which made the final decision regarding appellant.

■■ ■ Appellant also alleges that the participation of the hospital's attorney constituted a violation of his right to due process. Appellant contends that the hospital attorney acted as both judge and prosecutor during the hearing, examining witnesses and advising on motions and on the admissibility of evidence. In support of his position, appellant cites *Gigger v. Board of Fire & Police Commissioners* (1960), 23 Ill. App. 2d 433, 163 N.E.2d 541. In *Gigger* the court did not disapprove the procedure of having the attorney for the administrative agency both present evidence and advise the hearing officers on legal rulings; it merely disallowed the unfair, high-handed, and blatantly biased manner in which those functions were performed in that case. Some mixture of the judicial and prosecutorial functions is acceptable in administrative proceedings where the person performing the quasi-prosecutorial function is not also a member of the tribunal. (*Koelling v. Board of Trustees* (Iowa 1966), 146 N.W.2d 284.) Our review of the record in this case discloses that the conduct of the hospital's attorney was as fair and neutral as his position would allow, and that when he erred, he generally erred to the appellant's advantage.

Appellant further alleges that the charges against him were so vague

that he was not apprised of the offenses alleged, and was unable to prepare a defense. Specifically, he alleges that the conduct charged occurred after the date of his application for renewed staff privileges and was not relevant to his qualifications as a staff physician, as provided in the bylaws of the medical staff.

■■ We note that the charges themselves are so specific as to preclude any serious doubt about their effectiveness in informing the appellant of precisely what conduct would be under consideration. Appellant's argument with respect to the time of the conduct is more appropriately framed as a relevancy question. Certainly, actions performed after application but prior to appointment are relevant in determining whether the appointment should be granted.

Article IV of the staff bylaws reads as follows:

> "Determination of extension of privileges shall be based upon an applicant's training, experience, and demonstrated competence which shall be evaluated by review of the applicant's credentials, direct observation by Active Staff, and review of reports of the Professional Activities Committee."

As stated in *Sosa v. Board of Managers* (5th Cir. 1971), 437 F.2d 173, 176:

> "[T]his court recognizes that in the area of personal fitness for medical staff privileges precise standards are difficult if not impossible to articulate. [Citation.] The subjectives of selection simply cannot be minutely codified. The governing board of a hospital must therefore be given great latitude in prescribing the necessary qualifications for potential applicants. [Citations.] So long as the hearing process gives notice of the particular charges of incompetency and ethical fallibilities, we need not exact a précis of the standard in codified form."

(Accord, *Mauer v. Highland Park Hospital Foundation* (1967), 90 Ill. App. 2d 409, 415, 232 N.E.2d 776.) Plainly, the combination of the bylaws and the charges were sufficiently clear and definite to allow plaintiff to understand what conduct was at issue and to defend himself. Consequently, the charges were not impermissibly vague.

Finally, appellant contends that the findings of the credentials committee were against the manifest weight of the evidence. We disagree.

■■ In an appeal of an administrative determination, the reviewing court is required to affirm if the determination is not manifestly against the weight of the evidence and if there is substantial evidence on the record to support the determination. (*Mohler v. Department of Labor* (1951), 409 Ill. 79, 97 N.E.2d 762; *Quinlan & Tyson, Inc. v. City of Evanston* (1975), 25 Ill. App. 3d 879, 324 N.E.2d 65.) The finding that appellant had failed to take proper pre- and post-operative measures in the care of a

patient who had undergone abdominal surgery was not supported by medical testimony, and therefore, was not supported by substantial evidence. Hearing officers may not rely on their own expertise in making factual determinations such as the one in question. Their decision must be based on evidence presented at the hearing. *Smith v. Department of Registration & Education.*

■■ However, the record is replete with evidence of appellant's inability to work effectively with other members of the hospital staff, and it is apparent that this personality problem was the principal issue before the credentials committee. As stated in *Huffaker v. Bailey* (1975), 273 Or. 273, 278-79, 540 P.2d 1398, 1400:

> "Most other courts have found that the factor of ability to work smoothly with others is reasonably related to the hospital's objective of ensuring patient welfare. This conclusion seems justified for, in the modern hospital, staff members are frequently required to work together or in teams, and a member who, because of personality or otherwise, is incapable of getting along, could severely hinder the effective treatment of patients. * * * Hospitals uniformly consider co-operativeness an important factor, and in these circumstances it seems questionable whether this court should gainsay the hospitals' experience and judgment in this matter."

Clearly, appellant's inability to work with other members of the hospital staff was in itself sufficient grounds to deny him staff privileges. *Sosa v. Board of Managers*; *Bricker v. Sceva Speare Memorial Hospital* (1971), 111 N.H. 276, 281 A.2d 589.

■■ There can be no dispute that this hospital district can freely establish its own rules, regulations and qualifications for medical staff membership and its attending privileges, if they are not unreasonable or discriminatory, in order to fulfill its purpose of insuring that all patients receive the best possible medical care. The bylaws of the Union County Hospital District and the medical and dental staff contain such expressions of purpose, and we believe that a rational connection exists between the hearing and review provisions of the bylaws, which were followed and afforded to appellant, and the hospital district's insurance of professional and ethical qualifications of the staff physicians for the good of both the hospital and its patients. The executive committee concluded that 12 of the alleged incidents had, in fact, occurred, and recommended that appellant's privileges be denied and forthwith terminated. That decision was affirmed by three separate hospital bodies, and subsequently by the circuit court, which found no error with the conclusions reached, save two. These findings, in our opinion, are conclusively persuasive, and we rule in accordance therewith.

Therefore, the judgment of the circuit court of Union County is affirmed.

Judgment affirmed.

JONES, P. J., and KASSERMAN, J., concur.