URDUJA B. PULIDO, Plaintiff-Appellant, v. ST. JOSEPH MEMORIAL HOSPITAL, Defendant-Appellee.

Fifth District   No. 5—88—0470

Opinion filed December 15, 1989.

Norma J. Beedle, of Beedle & Isaacs, of Carbondale, for appellant.

William G. Ridgeway, of Ridgeway, McMeen & Miller, of Murphysboro, and Gary Mayes and Conny Davinroy Beatty, both of Thompson & Mitchell, of St. Louis, Missouri, for appellee.

JUSTICE WELCH delivered the opinion of the court:

This action was brought by appellant, Dr. Urduja B. Pulido, M.D. (hereinafter doctor), against appellee, St. Joseph Memorial Hospital in Murphysboro, Illinois (hereinafter hospital), after hospital summarily suspended doctor's privileges to practice at hospital. In her complaint, filed March 21, 1988, doctor alleges that hospital breached the contract of employment between the parties when it summarily suspended doctor's privileges without complying with the medical staff bylaws of the hospital, which were incorporated into the contract of employment. Doctor's complaint seeks reinstatement of her hospital privileges, money damages for lost income and "any other appropriate relief."

On May 20, 1988, hospital filed a motion for summary judgment or, in the alternative, a motion to strike doctor's prayer for monetary relief and doctor's jury demand. In its supporting memorandum of law, hospital argues that it is immune from money damages pursuant to section 10.2 of the Hospital Licensing Act (Ill. Rev. Stat. 1987, ch.

111½, par. 151.2), that doctor's action lies in equity rather than law and therefore she is not entitled to trial by jury, and that hospital complied with its bylaws in summarily suspending doctor's privileges.

By order dated July 5, 1988, the circuit court of Jackson County granted hospital's motion for summary judgment, finding that it had jurisdiction over the subject matter and the parties, that no genuine issue as to any material fact exists, that hospital is entitled to judgment as a matter of law, and that hospital complied with its bylaws in summarily suspending doctor from its medical staff. Doctor appeals. We affirm.

The facts do not appear to be in dispute. The medical staff bylaws provide for two different methods of suspending a doctor's privileges. The first, a nonsummary procedure, provides that whenever the activity or conduct of a doctor is considered to be deficient, corrective action may be requested by certain designated representatives of the hospital or its medical staff. When such a request for corrective action is received, the chief of staff must immediately appoint an *ad hoc* committee to investigate the matter. The *ad hoc* committee reports to the executive committee on the results of its investigation. As part of its investigation, the *ad hoc* committee must allow the doctor under investigation to appear before the committee to refute or explain the charges.

After receiving the report of the *ad hoc* committee, the executive committee must act on the request for corrective action. Again, before any action is taken, the doctor must be allowed to appear before the executive committee. Any recommendation by the executive committee for suspension of privileges entitles the doctor to the procedural rights provided in article VIII of the bylaws.

With respect to a summary suspension, the bylaws provide that certain representatives of the hospital or its medical staff may, whenever such action must be taken immediately in the best interest of patient care in the hospital, summarily suspend the privileges of a doctor. Such a doctor may request the executive committee to hold a hearing on the matter in accordance with article VIII of the bylaws. The executive committee may recommend modification, continuance or termination of the summary suspension. If an adverse recommendation is made, the doctor is entitled to request appellate review by the governing body in accordance with article VIII.

Article VIII provides that when any doctor receives notice of a recommendation of the executive committee which, if ratified by the board of trustees, will adversely affect his status on the medical staff, that doctor is entitled to a hearing before an *ad hoc* committee of the

medical staff. If, after that hearing, the recommendation of the executive committee is still adverse, the doctor is entitled to an appellate review before the board of trustees.

Article VIII also provides certain other procedural rules. It provides that within seven days after receipt of a request for hearing from a doctor, the executive committee must serve the doctor with a notice of hearing which states in concise language the acts or omissions with which the doctor is charged, a list of specific or representative charts being questioned, and/or any other reason or subject matter that was considered in making the adverse recommendation or decision. Article VIII also provides that where a hearing is held before an *ad hoc* committee, no staff member who actively participated in the consideration of the adverse recommendation may be a member of the *ad hoc* committee unless it is impossible to select a representative group due to the size of the medical staff.

The procedures followed in the instant case are as follows. On February 25, 1986, a special meeting of the executive committee of the hospital medical staff was held to discuss specific disciplinary action and the process of addressing problems associated with a suspected impaired physician. The committee agreed to temporarily suspend the suspected doctor's privileges with offer of a treatment plan, and, if the treatment plan was refused, impose a permanent suspension.

At the regular meeting of the executive committee, held March 11, 1986, it was decided that the doctor in question would be contacted by letter and phone to set up a meeting with a consultant expert on substance abuse and physician impairment. The doctor's privileges would be temporarily suspended and a treatment plan offered. If the treatment plan was refused, the doctor's privileges would be permanently suspended.

By letter dated March 17, 1986, doctor was notified that the executive committee felt that it had sufficient evidence to indicate some type of impairment on the part of the doctor, resulting in activities that were lower than the standards and aims of the medical staff and that pose potential harm to patients. Doctor was requested to attend a meeting to discuss the specifics of any disciplinary action to be taken. That meeting was apparently held March 28, 1986. By letter dated April 11, 1986, doctor was informed that, since the hospital had not heard from doctor, it was assumed that she had decided not to accept a treatment plan. "On a decision by the Executive Committee of the Medical Staff, ratified by the Board of Trustees, we hereby advise you of summary permanent suspension of your privileges at *** Hos-

pital." The suspension was to take effect April 15, 1986, at 7 a.m. This letter was sent by Sister Cunegunda Mueller, chief executive officer of hospital.

By letter dated April 15, 1986, and through her attorney, doctor objected to the summary suspension on the basis that immediate summary action had not been necessary. The letter requested that the hospital remove the summary suspension and proceed with the non-summary procedures. The letter also requested a hearing before an *ad hoc* committee of the medical staff in accordance with article VIII. This attorney later withdrew from representation, and by letter dated April 24, 1986, doctor's new attorney stated, "In his letter of April 15, 1986 to Sister Mueller, Mr. Hines requested that a hearing be scheduled before an *ad hoc* committee of the medical staff. My review of *** Hospital's Bylaws indicates that the first step in the review of summary suspension may be a hearing before the executive committee of the medical staff ***. In any event, *** we would appreciate having the appropriate hearing scheduled as soon as possible."

On May 1, 1986, a notice of hearing was sent to doctor. The hearing was scheduled before the executive committee on May 13, 1986. The notice detailed the acts or omissions which led to the suspension. The first such act or omission was generally called "Behavioral Concerns." Under this heading were listed five specific medical cases containing instances of alleged unusual behavior by doctor. The next general category was called "8:00 a.m. scheduled cases: Dr. Pulido late." Under this category were four specific medical cases in which doctor had allegedly been late. The next category was "Excessive blood loss—surgical procedures." Four medical cases were listed in which there was allegedly excessive blood lost by the patient during surgery performed by doctor. The final category was called "Inability to reach physician when she was on ER call." Three specific instances of doctor's unavailability were listed.

On May 13, 1986, a hearing was held before the executive committee of the medical staff. Both doctor and hospital were represented by counsel. Members of the executive committee were Dr. Treece, Dr. Strack, Dr. Macaraeg and Dr. Porter. Also present were Sister Mueller, chief executive officer of the hospital, and doctor. Witnesses were presented by both sides and both attorneys made closing statements. The executive committee presented its recommendation on May 20, 1986. The executive committee found the acts or omissions charged to be proven and recommended that the summary permanent suspension be modified to a temporary suspension pending a complete medical examination, a complete psychiatric evaluation, a

substance abuse evaluation of doctor and a request for reconsideration from doctor.

Doctor requested appellate review, and an appellate review hearing was held before the board of trustees on June 19, 1986. On June 23, 1986, the board notified doctor that it found the recommendation of the executive committee was justified and was not arbitrary and capricious and affirmed that recommendation.

The instant action was filed in the circuit court of Jackson County. It comes before us on appeal from a summary judgment entered in favor of hospital.

■ On review of a trial court's entry of summary judgment, a reviewing court's sole function is to determine whether the trial court correctly determined that there were no genuine issues of material fact, and if there were none, whether judgment for the moving party was correctly entered as a matter of law. (*Hennessy v. Foley* (1987), 154 Ill. App. 3d 1039, 1042, 507 N.E.2d 1258, 1260.) Hospital correctly points out that our review is even more limited in this case by the "rule of non-review" pertaining to medical staff decisions made by a private hospital. Decisions of private hospitals respecting the termination or curtailment of existing privileges of doctors on their medical staffs are subject only to limited judicial review to determine whether such decisions were rendered in compliance with the bylaws of the institution. (*Knapp v. Palos Community Hospital* (1988), 176 Ill. App. 3d 1012, 1018, 531 N.E.2d 989, 993.) Furthermore, a doctor claiming that a private hospital violated its bylaws in rendering a decision regarding his staff privileges is only entitled to relief requiring the hospital to .comply with those bylaws before it renders its decision. The doctor is not entitled to monetary damages or to reinstatement of his staff privileges. (*Knapp*, 176 Ill. App. 3d at 1021, 531 N.E.2d at 995.) Because doctor in the instant case prayed not only for money damages and reinstatement to her staff privileges, but also for "any other appropriate relief," we will exercise our jurisdiction to determine whether the trial court properly granted a summary judgment on the basis that hospital complied with its bylaws in suspending doctor from its staff.

■ On appeal, doctor outlines five areas in which she argues the hospital breached the medical staff bylaws. She first argues that the notice of hearing did not sufficiently set forth the acts and omissions with which doctor was charged, in·violation of the bylaws. The bylaws require that the doctor be served with a notice of hearing which states in concise language the acts or omissions with which doctor is charged, a list of specific or representative charts being questioned,

and/or any other reason or subject matter that was considered in making the adverse recommendation or decision. The notice of hearing served upon doctor in the instant case satisfies this requirement. The notice of hearing lists four general areas of doctor's alleged deficiencies, with several specific instances or cases under each category. For example, under the general category "Behavioral Concerns," the notice of hearing states:

"Medical Record No. 55152, (patient name deleted), 8/14/85— Patient scheduled for Fractional D&C and cold cone biopsy.

Dr. Pulido arrived at 0820 looking 'wild', speech was muffled and incomprehensible. During surgical procedure, Dr. Pulido probed at the opening with the uterine sound, missing on most attempts. Dr. Pulido tried to clamp a needle with a tenaculum instead of a needle holder (happened twice during the procedure). After the attempted D&C, Dr. Pulido tried unsuccessfully to apply suture to the outer rim of cervix. When she couldn't do this she then started cutting on the cervix with a stab blade. This resulted in a large amount of bleeding.

Throughout the case she acted as if she couldn't see well, was confused, and would reach for instruments and miss them. She talked continuously in circles making no sense.

Chief of Staff, Physician Advisor for surgery, and Vice President of Medical Staff spoke to Dr. Pulido regarding this case.

Surgical procedure took 1 hour. Patient was scheduled as Same-Day-Surgery, but had to be admitted for additional observation."

This is only one representative example listed in the notice of hearing of specific instances or cases in which doctor's actions were allegedly deficient. Furthermore, doctor was aware that hospital suspected her alleged problems might be related to substance abuse, as she previously had been asked to consult with a substance abuse and impaired physician expert. The notice of hearing served upon doctor substantially complied with the medical staff bylaws.

■ The next area in which doctor argues hospital did not comply with the bylaws relates to the conduct of the suspension hearing before the executive committee. Doctor argues that the suspension hearing was not conducted under the rules of evidence, "nor under any other type of rules of admissibility." She argues that the record of the hearing is replete with inadmissible hearsay and conclusions.

The bylaws provide that the hearing need not be conducted strictly according to rules of law relating to the examination of witnesses or presentation of evidence. "Any relevant matter upon which

responsible persons customarily rely in the conduct of serious affairs shall be considered, regardless of the existence of any common law or statutory rule which might make evidence inadmissible over objection in civil or criminal action." Doctor does not point to any specific instances where evidence not meeting the above standard was admitted against her, and we find no violation of the bylaws in the admission of evidence at doctor's suspension hearing.

■ Doctor also argues that the bylaws were violated because the results of the hearing were determined before the hearing took place. Prior to the hearing, the hospital attorney submitted to the committee a draft recommendation adverse to doctor. Doctor's attorney objected. Hospital's attorney clarified that the draft was only a proposal and that the committee was not bound to concur in it. Doctor argues that this indicates that the committee had no intention of providing her a fair hearing. Doctor concedes in her brief, however, that the committee did not concur in the proposed draft, but modified it after the hearing. The record as a whole does not indicate that doctor did not get a fair hearing or that the committee had prejudged her. We find no substantial violation of the bylaws.

■ Doctor next argues that hospital denied her a hearing before a fair and impartial tribunal, and that we may look beyond the bylaws in deciding this issue. Doctor is correct that a narrow exception to the "rule of non-review" exists allowing review of hospital proceedings to determine whether the decision-making tribunal was impartial and unbiased. *Maimon v. Sisters of the Third Order of St. Francis* (1983), 120 Ill. App. 3d 1090, 1094, 458 N.E.2d 1317, 1319.

■ Doctor first argues that she was entitled to a hearing before an *ad hoc* committee consisting of members of the medical staff who were not members of the executive committee and who had not actively participated in the executive committee's decision to summarily suspend her. The medical staff bylaws do provide that when any doctor is notified of an adverse recommendation of the executive committee, that doctor is entitled to a hearing before an *ad hoc* committee of the medical staff. If the recommendation of the executive committee is still adverse following this hearing, the doctor is entitled to appellate review before the board of trustees. The bylaws further provide that no staff member who has actively participated in the consideration of the adverse recommendation of the executive committee shall be a member of the *ad hoc* hearing committee.

Hospital argues that the section of the bylaws which provides for a hearing before an *ad hoc* committee does not apply to a summary suspension. We agree. The bylaws provide for separate and distinct

procedures for nonsummary suspension of privileges and summary suspension of privileges. The section of the bylaws pertaining to nonsummary suspension provides for an initial investigation by an *ad hoc* committee and action by the executive committee, which may include a recommendation for suspension. That section further provides that any recommendation for suspension entitles the doctor to the procedural rights provided in article VIII of the bylaws.

Article VIII provides for a hearing before an *ad hoc* committee, the members of which must not have actively participated in the adverse recommendation of the executive committee. The section of the bylaws pertaining to nonsummary suspension does not mention a right to appellate review, as that right is granted under article VIII.

The section of the bylaws pertaining to summary suspension provides for a different procedure. Upon notification of a summary suspension, a doctor is entitled to a hearing before the executive committee in accordance with article VIII. The executive committee may recommend modification, termination or continuance of the summary suspension. If the recommendation of the executive committee is adverse, the doctor is entitled to appellate review by the governing body. The doctor is not entitled to the intermediary step of a hearing before an *ad hoc* committee, as the section of the bylaws pertaining to summary suspension provides for immediate appellate review of the action of the executive committee. Thus, the bylaws did not require a hearing before an *ad hoc* committee in the instant case and were not violated in this respect. Nor do we think that the denial of a hearing before an *ad hoc* committee in itself constituted a denial of a hearing before a fair and impartial tribunal. Doctor must demonstrate that the tribunal which actually decided her case was in some way biased or partial, or that it otherwise deprived her of a fair hearing.

■ Doctor also argues that she was denied a hearing before a fair and impartial tribunal because she was denied the right to challenge members of the tribunal for cause. However, the record reflects that doctor never made any request to do so. Without attempting to challenge a committee member for cause, doctor is in no position to complain that she was denied the right to do so. She was not denied a hearing before a fair and impartial tribunal on this basis.

Doctor next argues that two of the hearing committee members participated in her prosecution and testified against her, demonstrating bias. She argues that Dr. Strack encouraged the hospital prosecutor to press forward on skirted issues when Dr. Strack asked, "Sister, do you feel that your concerns about your inability to communicate with [Dr. Pulido] have been adequately addressed? I think you skirted

the issue." Doctor also argues that both Dr. Treece and Dr. Strack testified against her concerning their personal participation in the matters charged. During the hearing, doctor was asked whether any other doctors had talked to her about some of the alleged problems. Doctor denied that any doctor had ever talked to her. Dr. Treece and Dr. Strack interjected that they had both talked to doctor. Doctor's counsel then inquired as to whether doctor had appeared to be under the influence of drugs and alcohol. Drs. Treece and Strack proceeded to answer doctor's counsel's questions. Drs. Treece and Strack also questioned doctor about matters of which they had personal knowledge relating to the charges against doctor.

██ Due process does not require that every member of the decision-making tribunal be completely unfamiliar with the factual issues presented at a hearing. (*Ladenheim v. Union County Hospital District* (1979), 76 Ill. App. 3d 90, 95, 394 N.E.2d 770, 774.) Where members of the tribunal have personal knowledge of facts at issue, they should be permitted to bring those facts to light. Furthermore, members of the tribunal may properly ask questions of the witnesses. There is no evidence in the record of actual personal bias. See *Ladenheim*, 76 Ill. App. 3d at 95-96, 394 N.E.2d at 774.

Finally, doctor argues that Dr. Strack was personally biased against her, and points to her complaint, which, she states, recites a history of personal and professional conflict between the two. Again, there is no evidence of actual personal bias in the record.

██ Doctor next argues that the hospital's refusal to reconsider her request for reinstatement was in violation of the bylaws because it was arbitrary, unreasonable and capricious. Doctor's complaint alleges that on December 9, 1987 (more than one year after doctor's suspension was affirmed by the board of trustees), doctor submitted reports of a complete medical examination, complete psychiatric examination and substance abuse evaluation, as well as a request for reconsideration of her status. On February 21, 1987, doctor received a letter from hospital indicating that her request for reinstatement of privileges would not be reconsidered. Doctor argues that this decision violates the bylaws because it was arbitrary, unreasonable and capricious. The decision was unreasonable, she argues, because the recommendation of the executive committee modifying her permanent summary suspension states that upon receipt of the above-mentioned documents, the committee would review same and render a decision on doctor's request for reconsideration of her privilege status. However, hospital's memorandum in support of its motion for summary judgment states that hospital advised doctor that it had refused to

consider doctor's request for reconsideration because doctor's appointment to the medical staff had expired June 30, 1986, that doctor had not requested reappointment, and that if she wished to be considered for medical staff membership, she should submit an application. This reveals that hospital's action was not arbitrary, unreasonable or capricious, but was actually in compliance with hospital's normal procedures. We find no violation of the bylaws in this respect.

■ Doctor also argues in her brief on appeal that the written recommendation of the executive committee violates the Illinois Hospital Licensing Act because it does not explain or give reasons for the adverse decision. This issue was not before the trial court, and we will therefore not review it on appeal. It is axiomatic that questions not raised before the trial court are deemed waived and may not be raised for the first time on appeal. *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872, 879.

■ The last argument raised by doctor is that summary suspension was not appropriate in this case because the 50-day delay in imposing the suspension demonstrates that action need not have been taken immediately in the best interest of patient care. She argues that the hospital imposed a summary suspension in order to circumvent her due process rights.

Whether the action of summary suspension must be taken immediately in the best interest of patient care is a medical question to be addressed to the discretion of medical professionals. It is not subject to judicial review. *Rao v. St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis* (1986), 140 Ill. App. 3d 442, 460, 488 N.E.2d 685, 697.

We agree with the trial court that there are no disputed questions of material fact. The only questions before the trial court were ones of law, and the trial court properly found that hospital was entitled to judgment as a matter of law.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

CHAPMAN and HOWERTON, JJ., concur.