(No. 35075.—

FRIDA FENYES, Appellant, *vs.* STATE EMPLOYEES' RETIREMENT SYSTEM OF ILLINOIS *et al.,* Appellees.

*Opinion filed May 22, 1959—Rehearing denied September 22, 1959.*

MAURICE H. RUTTENBERG, of Chicago, (FRED S. RUTTENBERG, of counsel,) for appellant.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES and THEODORE G. MAHERAS, Assistant Attorneys General, of counsel,) for appellees.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County, entered in a proceeding brought under the Administrative Review Act, affirming the decision of the Board of Trustees of the State Employees' Retirement System. The appeal was directed to this court in that the State has a direct substantial pecuniary interest in the outcome of the action. *Bohm* v. *State Employees' Retirement System,* 404 Ill. 117.

Plaintiff's husband, Dr. George Fenyes, was employed by the State as a psychiatrist in 1942, and became a member of the State Employees' Retirement System, herein

called the System. During his employment he contributed $2,772.82 to the System, on which interest had accumulated in the amount of $260.11, making a total of $3,032.93. On October 29, 1953, he signed a statement of intention to resign from his position. On October 31, 1953, he executed a resignation voluntarily resigning as psychiatrist II for "personal reasons," effective as of November 15, 1953, on which date he ceased to be employed by the State. He died June 27, 1954.

Thereupon plaintiff filed claim for the ordinary death benefit payable to her as the widow of Dr. George Fenyes, deceased, in the amount of $6,782.93. The Board of Trustees of the System denied the claim for the State's portion of the ordinary death benefit, but allowed her to recover the contributions which Dr. Fenyes had made to the System during his service with the State, plus accumulated interest.

It is conceded that the plaintiff would be entitled to the ordinary death benefit if decedent died while in service, but that she would not qualify for such benefit if he had effectually withdrawn from the service prior to his death. In the latter event, plaintiff would be entitled only to a refund of the accumulated contributions which decedent had made. (Ill. Rev. Stat. 1957, chap. 127, pars. 222, 226.) Section 3—21 provides that " 'Withdrawal from service' means complete severance of employment of any member as an employee of the State or of all Departments, by resignation, discharge or dismissal." Ill. Rev. Stat. 1957, chap. 127, par. 217.

It is the contention of plaintiff that her husband had not been discharged or dismissed and had not withdrawn from the service, since his written resignation was a nullity due to his lack of mental capacity. Defendants urge that the evidence substantiated the decision of the Board of Trustees of the System and the circuit court denying the claim for the ordinary death benefit. It is therefore neces-

sary to examine the record as to the determinative factual question of whether the decedent was mentally incompetent at the time of his resignation.

At the administrative hearing, three witnesses testified for plaintiff. Mrs. Fenyes testified that in 1952 Dr. Fenyes worked 16 hours a day, had headaches, was nervous and exhausted; that in November, 1953, he was very confused and disconcerted; that he mixed up names and often lapsed into the Hungarian language; and that he had seizures and fell off the bed four or five times. She further testified that she was of the opinion that he did not know what he was doing when he resigned.

Plaintiff's cousin, Hermina Splitter, testified that beginning in 1952, decedent was nervous and had headaches and seizures; and that he frequently lapsed into the Hungarian language. She further stated that she did not think Dr. Fenyes knew what he was talking about when he came home and told Mrs. Fenyes and herself that he had resigned.

Dr. Ernest Haase, a specialist in neurology and psychology, testified that he treated Dr. Fenyes; that he had known him for ten years; and that he first saw him as a patient on January 12, 1953. He further testified that Dr. Fenyes had then just been admitted to the hospital; that he was confused and showed the effects, on the left side of his body, of a "slight motor weakness and convulsive seizures of a special type;" that "There was no doubt that Dr. Fenyes had a brain injury or lesion;" and that his condition could have been caused by a stroke, encephalitis, or a tumor. The evidence further established that later, while in Florida, decedent experienced a similar seizure on the right side; and that in April, 1954, he had another seizure and was taken to the hospital where he died on June 27. The autopsy revealed that the cause of his death was an extensive brain tumor involving both cerebral hemispheres. The witness saw the decedent about November, 1953, and from that observation testified as follows:

"Q. And do you have an opinion as to whether he knew at the time what he was doing?

A. He was at that time already disturbed. He was depressed, he was slow in his mental reactions, and I think the fact is that he lacked the same quick and sound judgment he had before.

Q. Do you have an opinion as to whether he knew that he was executing a resignation from his employment by the State of Illinois?

A. Yes, I think he knew.

Q. You think he knew?

A. Yes, that he did it.

Q. Do you have an opinion as to whether he could form a judgment at that time?

A. That I doubt very much."

On cross-examination, Dr. Haase admitted that he was of the opinion in April, 1953, that decedent was ready to resume his professional activities; that he was capable of performing his professional duties on October 23, 1953; and that he wrote letters to that effect. Even after the resignation, the witness testified that he believed that Dr. Fenyes could enter the general practice of medicine in Chicago. The witness further testified that it was his opinion after the autopsy that "probably in the late fall of 1953," decedent ceased to be able to make important decisions.

Three physicians testified for the System. Dr. Haines, who had known decedent for five years, stated that on October 22, 1953, he was present at an interview with him which lasted for 30 or 40 minutes; that he was of the opinion that Dr. Fenyes knew what he was talking about; and that the witness noted no change in the mental capacity of Dr. Fenyes, although his actions were slower.

Dr. Hletko, a psychiatrist, testified that he had known Dr. Fenyes well since 1942, and had recommended his assignment to Kankakee in September of 1953, after his hospitalization; that he was present at the interview of

Dr. Fenyes on October 22, 1953; and that he was of the opinion that Dr. Fenyes knew what he was doing.

Dr. Klein, a psychiatrist and superintendent of the Kankakee State Hospital, testified that he had known Dr. Fenyes since 1946; that on October 29, 1953, he informed him that he would have to vacate his cottage and move to an apartment in the staff house; that Dr. Fenyes objected, stated that he wasn't going to be pushed out of the house, and that he would resign; and that Dr. Fenyes signed his resignation paper that day. Dr. Klein was also of the opinion that Dr. Fenyes understood what he was doing.

At the conclusion of the evidence, the hearing officer found that for the period of time between the execution of the statement of intention to resign and the actual resignation Dr. Fenyes was rational, and that his actions subsequent to his resignation clearly manifested an intent to sever, by resignation, his employment with the State; and he concluded, "that the resignation was a rational action of the employee; that it was operative to sever his employment with the State * * *." The Board of Trustees of the System approved the action of the hearing officer, and the circuit court affirmed the administrative decision.

Under the Administrative Review Act, the findings of the administrative agency on questions of fact are *prima facie* correct. They may be reviewed to determine if they are supported by the evidence, but they can be set aside only if against the manifest weight of the evidence. *Kellogg Switchboard and Supply Corp.* v. *Department of Revenue,* 14 Ill.2d 434; *Logan* v. *Civil Service Com.* 3 Ill.2d 81; *Drezner* v. *Civil Service Com.* 398 Ill. 219.

The judicial function of the reviewing court in such case is comparable to that presented where such court is called upon to determine an issue at law as to whether there is competent evidence to support the judgment of the lower court, and when there is evidence to support the

112

findings of the administrative agency, its decision will be affirmed. *Kellogg Switchboard and Supply Corp.* v. *Department of Revenue,* 14 Ill.2d 434, 439.

In the case at bar we have carefully reviewed the evidence, and referred to the original record when the parties have disputed the purport of the testimony. We conclude that the testimony of defendants' witnesses supported the finding that Dr. Fenyes understood the nature and character of his resignation, and that it was a rational act, operative to sever his employment with the State. We further believe that the testimony of plaintiff's medical witness failed to establish pre-existing incompetence on the part of Dr. Fenyes. The findings of the System are supported by the record, and are not contrary to the manifest weight of the evidence.

Plaintiff further argues that Dr. Klein, the supervisor of Kankakee State Hospital, had a duty to advise Dr. Fenyes against resigning. We are aware of no authority, and none has been cited, which imposes such legal duty upon Dr. Klein. In fairness to him, we find nothing in the record which even suggests that the resignation was not accepted in good faith.

The judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*