BALLIN DRUGS, INC., *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF REGISTRATION AND EDUCATION *et al.*, Defendants-Appellants.

First District (1st Division)   No. 87—0128

Opinion filed February 16, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Edward M. Kay, Assistant Attorney General, of Chicago, of counsel), for appellants.

Bernard B. Brody and Sidney Z. Karasik, both of Chicago, for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, the Illinois Department of Registration and Education (Department), appeals from the order of the circuit court of Cook County reversing the decision of the Director of the Department revoking the plaintiff Ballin Drugs' (Ballin's or Ballin Drugs') controlled substances license and pharmacy license and the plaintiffs', Sidney Brottman's (Brottman's) and Burton Kaufman's (Kaufman's), pharmacist licenses.

On appeal, the Department contends: (1) the "good faith" provision of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1981, ch. 56½, par. 1100 *et seq.*) is not unconstitutionally vague and uncertain; (2) the Department conducted the administrative proceedings according to the processes prescribed by law; (3) members of the State Board of Pharmacy have the authority to conduct administrative hearings and to examine witnesses at them; (4) the hearing officer did not abuse his discretion in making evidentiary rulings during the administrative hearing; (5) the Department's findings and conclusions were not erroneous; and (6) the Department properly revoked

plaintiffs' licenses.

From January 1, 1978, through December 31, 1981, Ballin Drugs was a licensed pharmacy with a license to dispense controlled substances. From January 1, 1978, through April of 1981, Brottman was the pharmacist in charge and a dispensing pharmacist at Ballin. During that same time period, Kaufman was a dispensing pharmacist at Ballin as well as being a corporate officer and stockholder of Ballin. In April of 1981, Brottman became the owner of Ballin when Kaufman left.

In 1983, the Department filed an action against the plaintiffs seeking revocation or suspension of their licenses due to alleged abusive dispensing of schedule II controlled substances by Brottman and Kaufman at Ballin. On April 11, 1984, a hearing was held before the Illinois State Board of Pharmacy (Board). At the hearing, Richard Kuhlman (Kuhlman), who was employed by the Department as a drug compliance investigator, testified on behalf of the Department and stated that he investigated Ballin in 1983. During that investigation, he reviewed Ballin's schedule II prescription file and noted patients' names, prescribing physicians, how often prescriptions were filled, types of drugs prescribed, prescription numbers, quantities, dosages and directions. He did not take notes on all of the prescriptions he examined.

Kuhlman further testified that all of the prescriptions he examined were marked with the initials "S.B." or "B.K." The drug most frequently prescribed was Preludin, an anorectic, habit-forming drug prescribed for obesity. Kuhlman prepared charts summarizing his review of Ballin's files for the years 1978 through 1981.

The Department also called two expert witnesses to testify: (1) Marvin Graber (Graber), who was a registered pharmacist for approximately 35 years and who was paid by the Department to testify, and (2) Lawrence Slotnick (Slotnick), a registered pharmacist and drug compliance coordinator for the Department. Both men testified that the prescriptions which Kuhlman had examined were not filled in good faith as required by the Illinois Controlled Substances Act. Ill. Rev. Stat. 1981, ch. 56½, pars. 1102(v), 1312(a).

The plaintiffs called James Piacentini (Piacentini), a registered pharmacist since 1955, to testify. He stated that in 1979, he worked for the Department as a drug compliance investigator. At that time, he audited Ballin for the years 1978 and 1979. No action was taken against Ballin after that audit. Piacentini worked for the Department for 16 years, until July of 1981. At the time of the hearing, he worked for the Department of Mental Health. He testified that the

prescriptions in question were filled in good faith and that checking with the prescribing physician in order to verify the prescription was sufficient to show good faith.

Brottman and Kaufman, both testifying on their own behalf, maintained that verifying a prescription with the physician shows good faith.

After the hearing, the Board entered findings of fact, conclusions of law and made a recommendation to the Director. The Board found that plaintiffs had dispensed substances as summarized in the Department's exhibits Nos. 1 through 4 (Kuhlman's summary of his audit) and that they lacked good faith in dispensing those substances. The Board recommended revoking plaintiffs' licenses.

On January 14, 1985, the Director revoked Ballin's pharmacy license and controlled substance dispenser license and Brottman's and Kaufman's pharmacist licenses.

On February 20, 1985, plaintiffs filed a complaint in the circuit court of Cook County seeking administrative review of the Department's decision. After briefing by the parties, on December 17, 1986, the circuit court reversed the Department, holding that its decision was contrary to the manifest weight of the evidence and Illinois law. In a 15-paragraph order it cited numerous errors in the Department's decision.

■■ The circuit court first found that the "good faith" provision of the Illinois Controlled Substances Act (the Act) (Ill. Rev. Stat. 1981, ch. 56½, par. 1102(v)) is unconstitutionally vague and uncertain and unlawfully delegates legislative power by giving the Board of Pharmacy discretionary power without defining the terms used in the statute. In addition, calling the prescribing physician to verify a prescription and checking a patient's identification are sufficient to show good faith. The Department contends that those findings were erroneous. We agree.

The pertinent provisions of the Act state, in part, as follows:

"A practitioner, in good faith, may dispense a Schedule II controlled substance * * *." (Ill. Rev. Stat. 1981, ch. 56½, par. 1312(a).)

" 'Good Faith' means the prescribing or dispensing of a controlled substance by a practitioner in the regular course of professional treatment to or for any person who is under his treatment for a pathology or condition other than that individual's physical or psychological dependence upon or addiction to a controlled substance, except as provided herein: and application of the term to a pharmacist shall mean the dispensing of

a controlled substance pursuant to the prescriber's order which in the professional judgment of the pharmacist is lawful. The pharmacist shall be guided by accepted professional standards including, but not limited to the following, in making the judgment:

(1) Lack of consistency of doctor-patient relationship,

(2) Frequency of prescriptions for same drug by one prescriber for large numbers of patients,

(3) quantities beyond those normally prescribed,

(4) unusual dosages,

(5) unusual geographic distances between patient, pharmacist and prescriber,

(6) consistent prescribing of habit-forming drugs." (Ill. Rev. Stat. 1981, ch. 56½, par. 1102(v).) (This provision is now under section 102(u) of the Controlled Substance Act.)

The statute clearly lists six guidelines which a pharmacist "shall" consider in determining whether to dispense a controlled substance. Certainly, a pharmacist may, in addition to considering those guidelines, call the prescribing physician to verify a prescription and check a patient's identification. However, it is not enough for the pharmacist to do merely the latter without considering the six guidelines.

We find *Talman v. Department of Registration & Education* (1979), 78 Ill. App. 3d 450, 397 N.E.2d 151, to be dispositive. In that case, a pharmacist's license was revoked by the Department for dispensing 194 bottles of Hycomine syrup, a controlled substance, to a single family in an eight-month period, for having inventory shortages of controlled substances and for failing to keep records required by statute. On administrative review the pharmacist argued that section 102(w) (Ill. Rev. Stat. 1975, ch. 56½, par. 1102(w)) (the predecessor to section 102(v)) was vague and uncertain and unlawfully delegated legislative power. The appellate court disagreed, finding as follows:

"We cannot accept the plaintiff's argument. The statute does not merely require pharmacists to dispense controlled substances in 'good faith' without explaining what that term means. The statutory section contains six guidelines, phrased in simple language, which serve to put pharmacists on notice as to what kinds of practices might be found to constitute a lack of good faith. Greater particularity would necessitate the detailing of each controlled substance along with data showing what the normally prescribed quantities are, what the usual dosage is, and voluminous other information. Constitutional

due process standards do not require such specificity." *Talman v. Department of Registration & Education* (1979), 78 Ill. App. 3d 450, 457, 397 N.E.2d 151.

We find that section 102(v), defining "good faith," is not unconstitutionally vague and uncertain.

■ Moreover, the legislature has declared that in evaluating the evidence adduced at an administrative hearing, an agency may utilize its "experience, technical competence and specialized knowledge." (Ill. Rev. Stat. 1985, ch. 127, par. 1012(c).) The agency possesses the sufficient knowledge and expertise in order to determine whether there is a lack of good faith. Hence, an agency's decision must be affirmed if there is substantial evidence to support it and unless the opposite conclusion is clearly evident. *Talman v. Department of Registration & Education* (1979), 78 Ill. App. 3d 450, 454-55, 397 N.E.2d 151.

We find that there is substantial evidence to support the decision of the Director of the Board of Pharmacy and the opposite conclusion is not clearly evident.

Next, the Department contends that the circuit court erred in finding that the second amended complaint was insufficient to inform plaintiffs of the charges against them and to enable them to prepare a defense. We agree.

■ In administrative proceedings, a complaint need not state the charges with the same refinements and selectivity as a complaint in a court of record. (*Irving's Pharmacy v. Department of Registration & Education* (1979), 75 Ill. App. 3d 652, 655, 394 N.E.2d 627, *appeal denied* (1979), 79 Ill. 2d 621.) An administrative complaint need only "reasonably apprise the party of the case against him so that he will be able to intelligently prepare his defense." *Talman v. Department of Registration & Education* (1979), 78 Ill. App. 3d 450, 456, 397 N.E.2d 151.

In the case at bar, the complaint filed by the Department advised plaintiffs of the statutes they were charged with violating. It enumerated each prescription, physician, date, item, quantity, amount and pharmacist who filled the prescription. The complaint charged plaintiffs with dispensing schedule II controlled substances in an abusive manner from January 1, 1978, through December 31, 1981. It alleged that the prescriptions at issue were dispensed in unusual dosages, with a lack of consistent physician-patient relationship in some instances, with certain physicians consistently prescribing habit-forming drugs, and in some instances, with unusual geographic distances between patient, pharmacist and physician. The complaint also in-

formed plaintiffs that they were charged with violating the "good faith" provisions of the Controlled Substances Act (Ill. Rev. Stat. 1981, ch. 56½, pars. 1102(v), 1312(a)) and the "gross immorality" provision of the Pharmacy Practice Act (Ill. Rev. Stat. 1981, ch. 111, par. 4019). Lastly, the complaint informed plaintiffs of the penalty the Department was seeking: suspension or revocation of their licenses. The complaint sufficiently informed plaintiffs of the charges against which they would have to defend.

■ We also agree with the Department's contention that the circuit court erred in finding that plaintiffs were denied due process at the administrative hearing by the following: First, the Department delayed bringing its complaint until 1983 for activities that allegedly occurred as far back as 1978. We do not find this unusual considering the complaint was based on activities occurring between 1978 and 1981.

■ Second, plaintiffs argue that the hearing was more of a prosecution than an inquiry. From our review of the record, we find that the proceedings were not prosecutorial in nature.

■ Third, plaintiffs allege that the Department's witness, Marvin Graber, who presumably was an impartial expert for the Department, was in fact biased against plaintiffs as shown by his testimony and by the fact that he was paid to testify. Graber's testimony shows no bias against plaintiffs. He merely stated his expert opinion based on the evidence. The fact that he was paid for his testimony does not establish bias, but goes merely to the weight of his testimony, which was a matter for the fact finder, the Board, to ascertain, not a reviewing court. See *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 557, 370 N.E.2d 1198, *appeal denied* (1978), 71 Ill. 2d 601, *cert. denied sub nom. Ranquist v. Director of Department of Registration & Education* (1978), 439 U.S. 926, 58 L. Ed. 2d 318, 99 S. Ct. 309.

■ Fourth, plaintiffs argue that one of the Department's witnesses was allowed to stay in the hearing room despite an exclusionary order to the contrary. The circuit court found that Kuhlman was allowed improperly to stay in the hearing room throughout the proceedings. Plaintiffs clarify, however, that the witness was Graber, not Kuhlman. We do not believe that Graber's presence was error.

Prior to the Department's putting on its first two witnesses, Kuhlman and Graber, plaintiffs moved to exclude Graber from the room while Kuhlman testified. The Department explained that Graber, as its expert witness, was going to form his opinion based on Kuhlman's testimony, thus he needed to be present. Plaintiffs argued that Graber was not yet qualified as an expert and should be ex-

cluded. The hearing officer stated that if Graber was not initially qualified as an expert he would not be permitted to testify as one, therefore there was no harm in allowing him to stay in the room during Kuhlman's testimony. We agree. Graber ultimately was qualified as an expert and he based his opinion on Kuhlman's testimony. We find no error in his being present during Kuhlman's testimony.

■ Finally, plaintiffs assert that the Board's decision after the hearing was arbitrary and capricious and denied them due process. From our review of the record, we find that plaintiffs were given an opportunity to be heard, the right to cross-examination and an impartial hearing with the final result being based on the evidence. In administrative proceedings, this is sufficient to ensure due process. See *Sheehan v. Board of Fire & Police Commissioners* (1987), 158 Ill. App. 3d 275, 283-84, 509 N.E.2d 467.

■ The Department next contends that the circuit court erred in finding that Brottman and Kaufman should have received separate hearings. Plaintiffs argue that a severance should have been granted because there was no evidence against Kaufman, who left Ballin in April of 1981, but the Department was able to "bootstrap" its case against him by having only one hearing. We disagree.

The audit summaries attached to the complaint specified which pharmacist filled each prescription. In addition, the second amended complaint stated which initials, "B.K." or "S.B.," were on each prescription. Furthermore, Kaufman was not "bootstrapped" by the Department because he worked at Ballin for all but approximately eight months of the four years during which the allegedly improper activities took place. He left Ballin in April 1981, but the audit covered the time period of January 1978 through December 1981. Moreover, the plaintiffs' defenses were identical. Consequently, plaintiffs failed to prove, both before the hearing and now, how they were prejudiced by the Board's denial of their motion for separate hearings. See *People v. Olinger* (1986), 112 Ill. 2d 324, 345-47, 493 N.E.2d 579, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 180, 107 S. Ct. 1329.

■ The Department's next contention is that the circuit court erred in finding that plaintiffs were denied an impartial inquiry because a Board member, Sister Mary Margaret Wright, acted as both prosecutor and hearing officer for part of the hearing. We agree.

Due process requirements do not preclude administrative agencies from serving as both prosecutor and judge. It is not a denial of due process to combine judging and investigating functions. (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 54-55, 416 N.E.2d 1082.) "Without a showing to the contrary, State

administrators 'are assumed to be [persons] of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' [Citations.]" 84 Ill. 2d 42, 55.

In the instant case, plaintiffs fail to show that the Department's actions were predicated on other than objective findings. Absent such proof, plaintiffs' contentions that they did not receive an impartial inquiry cannot be sustained. See *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 56, 416 N.E.2d 1082.

■■■ The Department further contends that the circuit court erred in finding that the hearing officer made erroneous evidentiary rulings. First, the court found that the officer erred in permitting the Department to clarify orally its answer to plaintiffs' bill of particulars. We disagree.

Prior to the preliminary hearing, plaintiffs filed a motion for a bill of particulars. The Department's attorney served the plaintiffs' attorney at the preliminary hearing with a written response. Plaintiffs requested a clarification and the Department's attorney orally clarified it. From our review of the record, we find that the Department's attorney sufficiently clarified the response. A further written response was unnecessary at that point.

■■■ Next, the court found that the Board's decision was based on unreliable evidence, *i.e.*, Kuhlman's summary, exhibits Nos. 1 through 4. Plaintiffs contend that Kuhlman was inexperienced and that his testimony was not credible. In addition, they argue that Kuhlman's inaccurate and unreliable methodology and data collecting produced untrustworthy exhibits which prompted erroneous conclusions by witnesses. We disagree.

First, plaintiffs admitted that the prescriptions Kuhlman examined were filled by them at Ballin. In addition, the prescriptions themselves were in evidence. Thus, it was for the finder of fact to determine the reliability of Kuhlman's testimony and exhibits. See *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 557, 370 N.E.2d 1198, *appeal denied* (1978), 71 Ill. 2d 601, *cert. denied sub nom. Ranquist v. Director of Department of Registration & Education* (1978), 439 U.S. 926, 58 L. Ed. 2d 318, 99 S. Ct. 309. See also *Talman v. Department of Registration & Education* (1979), 78 Ill. App. 3d 450, 454, 397 N.E.2d 151 (The court found that the oral testimony alone of an investigator for the Department who conducted an audit on the plaintiff pharmacist was sufficient to support the Board's decision to revoke the plaintiff's license).

Furthermore, the circuit court erroneously found that Kuhlman's summary was inaccurate, that the testimony of Kuhlman and Slot-

nick was not credible and that Piacentini's testimony was credible. Evaluating the credibility of the witnesses is a matter for the fact finder. The Board found the Department's witnesses to be more credible than the plaintiffs'. As reviewing courts, neither this court nor the circuit court is in a position to reevaluate the testimony. *Broadway v. Secretary of State* (1985), 130 Ill. App. 3d 448, 452, 473 N.E.2d 967.

■■ The Department next contends that the circuit court erred in finding that the Department's findings and conclusions were erroneous as a matter of law, contrary to the manifest weight of the evidence and arbitrary and capricious. We agree.

The standard of review of an administrative agency's decision is as follows:

> "[T]he findings and conclusions of an administrative agency are *prima facie* true and correct. Those findings will be upheld on review unless they are against the manifest weight of the evidence or fail to be supported by substantial evidence in the record. [Citation.] In order to reverse an administrative decision, it is required that a reviewing court find that an opposite conclusion was clearly evident. [Citation.] A reviewing court will neither substitute its judgment for that of the administrative agency, nor overturn administrative findings unless they are without substantial foundation in the record. [Citation.]" (*Irving's Pharmacy v. Department of Registration & Education* (1979), 75 Ill. App. 3d 652, 658, 394 N.E.2d 627, *appeal denied* (1979), 79 Ill. 2d 621.)

In addition, courts do not have the authority to reweigh the evidence presented at an administrative hearing, or to make an independent determination of the facts. *Walter Spector Co. v. Illinois Liquor Control Comm'n* (1985), 133 Ill. App. 3d 95, 97, 478 N.E.2d 635.

In the case at bar, the evidence adduced at the hearing supported the decision of the Department. At least five out of the six guidelines listed in section 102(v) (Ill. Rev. Stat. 1981, ch. 56½, par. 1102(v)) were present: (1) in many instances, there was a lack of consistent doctor-patient relationship; (2) there was a high frequency of prescription for the same drug by one prescriber for large numbers of patients; (3) prescriptions were for quantities beyond those normally prescribed; (4) they were for unusual dosages; and (5) there was a consistent prescribing of habit-forming drugs.

For example, over the entire year of 1978, Ballin dispensed a total of 705 Preludin tablets to one individual who brought in 16 prescriptions from eight different doctors. Throughout a 50-day period

during that same year, Ballin filled prescriptions for two individuals from the same household who presented eight separate prescriptions for Preludin from two different doctors for a total of 530 tablets.

In 1979, over 4½ months, Ballin dispensed a total of 450 Preludin tablets to one individual who brought in nine prescriptions from five different doctors. During that same year, Ballin dispensed Preludin to two individuals from the same household. One of them received 610 tablets over 10 months, presenting 13 prescriptions from seven different doctors. The other individual received 360 tablets over eight months, presenting seven prescriptions from three different doctors. In addition, Ballin dispensed 180 Preludin tablets to one individual who presented four prescriptions from one doctor within a 33-day period.

In 1980, Ballin filled, for one individual, two prescriptions from two different doctors within two days, for 150 Preludin tablets. Ballin also dispensed 135 Preludin tablets to one individual who presented two prescriptions from two different doctors within a day of each other.

In 1981, Ballin dispensed to three members of the same household, who presented 22 prescriptions from one doctor over 8½ months, a total of 926 Preludin tablets. Ballin also filled, for one individual over 1½ months, three prescriptions from three different doctors for a total of 120 Preludin tablets.

The above are just a few examples of the prescriptions in question that plaintiffs filled over the four years. Moreover, on some of the prescriptions, plaintiffs noted only that the prescribing doctor was called, not that plaintiffs had informed the doctor that they recently had filled other doctors' prescriptions for the same patient and the same drug. Therefore, although many of the prescriptions in question were verified by the prescribing doctor, those verifications were made with pertinent information lacking. In our opinion, the Department's findings and conclusions are based on substantial evidence in the record and are not against the manifest weight of the evidence.

■■■ Finally, the Department contends that the circuit court erred in finding that the Department's decision to revoke plaintiffs' licenses was overly harsh and arbitrary. We agree.

A reviewing court will not interfere with an agency's decision to impose a certain sanction unless the agency acted unreasonably or arbitrarily or chose a sanction which is unrelated to the purpose of the statute. (*Walter Spector Co. v. Illinois Liquor Control Comm'n* (1985), 133 Ill. App. 3d 95, 97, 478 N.E.2d 635.) The purposes of the

Pharmacy Practice Act are to regulate and control the practice of pharmacy in order to protect the public health, safety and welfare and to ensure that only qualified individuals practice pharmacy in Illinois. (Ill. Rev. Stat. 1985, ch. 111, par. 4001.) The basic purpose of the Controlled Substances Act is "to provide a system of control over the distribution and use of controlled substances." (Ill. Rev. Stat. 1985, ch. 56½, par. 1100.) In the case at bar, those purposes will be served by revocation of plaintiffs' licenses.

While we realize that revoking a license is a harsh sanction which deprives a person of his livelihood, it is the administrative agency, not the judiciary, that determines what sanction is appropriate to protect the public. Unless an agency's decision is against the manifest weight of the evidence, the court must defer to the agency's expertise and experience. *Massa v. Department of Registration & Education* (1987), 116 Ill. 2d 376, 388, 507 N.E.2d 814.

After reviewing the record, we cannot conclude that the decision of the Board of Pharmacy to revoke plaintiffs' licenses was against the manifest weight of the evidence. Therefore, we must defer to the expertise and experience of the Board.

Accordingly, the judgment of the circuit court of Cook County is reversed, and the order by the Director of the Department of Registration and Education, revoking the controlled substances and pharmacy licenses of Ballin Drugs, and the pharmacist licenses of Sidney Brottman and Burton Kaufman, is reinstated.

Reversed.

BUCKLEY and QUINLAN, JJ., concur.