FIRST DIVISION

August 25, 1997

No.  1-95-3599

EARL N. CALDWELL, ) Appeal from the

 ) Circuit Court

Plaintiff-Appellant, ) of Cook County.

 )

v. )

 )

THE DEPARTMENT OF PROFESSIONAL )

REGULATION, NIKKI M. ZOLLAR, )

Director, and THE MEDICAL ) Honorable

DISCIPLINARY BOARD OF THE ) MARGARET McBRIDE,

DEPARTMENT OF PROFESSIONAL ) Judge Presiding.

REGULATION, )

 )

Defendants-Appellees. )

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Dr. Earl N. Caldwell, brought an action in the circuit court of Cook County against the Illinois Department of Professional Regulation (the Department), the Department's director, Nikki M. Zollar (the Director), and the Department's Medical Disciplinary Board.  Plaintiff's complaint sought administrative review of the Director's decisions to place plaintiff's medical license on probation for five years, to revoke plaintiff's controlled substances license, and to fine plaintiff $20,000.  The circuit court affirmed the Director's decision, and plaintiff appealed.  The sole issue raised on appeal is whether the circuit court erred in finding that the Director's decision was not contrary to the manifest weight of the evidence.

On October 18, 1990, the Department filed a 20-count complaint against plaintiff.  Counts I through XVI alleged that plaintiff overcharged for medical services and charged for services that were unnecessary or not provided.  The hearing officer resolved these counts in favor of plaintiff, and they are not relevant to the instant appeal.

Counts XVII through XX alleged that, between 1984 and 1990, plaintiff prescribed controlled substances to a patient, Christine Barnes, for nontherapeutic purposes in violation of the Illinois Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111,  par. 4433), the Illinois Medical Practice Act of 1987 (225 ILCS 60/22(A) (West 1994)), and the Illinois Controlled Substances Act  (720 ILCS 570/304, 312 (West 1994)).  In each of these counts, the Department sought that plaintiff's medical license be suspended or revoked or that plaintiff be otherwise disciplined.

At various times between June 10, 1991, and September 26, 1991, a hearing on the complaint was held before the assigned hearing officer.  Plaintiff testified on his own behalf.  He stated that he first treated Barnes in 1984 and continues to treat her through the time of the hearing.  Barnes has suffered from numerous ailments, including hypertension, arthritis, obesity, and a herniated disc in her back.  

Plaintiff treated Barnes by conducting physical examinations and prescribing medications.  The Department introduced into evidence copies of at least 74 prescriptions plaintiff issued to Barnes for various pain killers and tranquilizers.  Plaintiff identified each of these prescriptions, most of which authorized at least one refill.

The drugs prescribed by plaintiff were Darvocet N-100, meprobomate, phenobarbital, and Tylenol-4.  Darvocet and Tylenol-4 are analgesics used to relieve mild to moderate pain.  Meprobomate is a tranquilizer that plaintiff testified can be used as a muscle relaxant.  Phenobarbital is a sedative.  All of these drugs are controlled substances and are capable of causing dependency.  The Physician's Desk Reference describes each of them as having a "high potential for abuse."  

In 1988, Barnes began seeking refills too quickly.  She explained to plaintiff that she was depleting her supply more quickly than the rate prescribed because she was giving some of the pills to her husband and daughter.  Plaintiff instructed Barnes that if her husband and daughter needed medications, they would have to be examined.  Plaintiff did not change Barnes' prescriptions after this discussion.

Plaintiff testified that he believes his treatment of Christine Barnes was consistent with accepted standards of medical care.  Plaintiff never detected any signs that Barnes was becoming dependent on any of the medications he prescribed.

Dr. Lafayette Singleton testified as an expert witness on plaintiff's behalf.  Dr. Singleton is board certified in neurology, a field that includes treatment of lower back pain.  Dr. Singleton testified that a proper course of treatment for a patient such as Christine Barnes would include physical therapy and prescriptions for analgesics and muscle relaxants.  It would not be improper to prescribe these medications again if the patient continued to experience pain.  Under questioning from the hearing officer, Dr. Singleton testified that a patient who seeks numerous prescriptions for Darvocet and Tylenol-4, with refills, in the space of two months may be displaying signs of addiction.

Earnest Barnes, Christine Barnes' husband, testified that he never consulted plaintiff as a physician.  He also stated that in November 1989 he contacted plaintiff, complaining that his wife was addicted to pain pills.  He asked plaintiff to help her stop taking the pills, but the prescriptions continued.  On April 12, 1990, Mr. Barnes found his wife on the bathroom floor unable to stand because she had taken too many pills.  He called the paramedics, who took Christine to St. Francis Hospital.  She remained there for four or five days.  After her release from the hospital, Christine continued to see plaintiff, and plaintiff continued to prescribe the same drugs for her.  Christine was still seeing plaintiff at the time of the hearing.  Mr. Barnes testified that he never took any of his wife's pain pills. 

Dr. Laszlo Koos testified that he was on duty at St. Francis Hospital when Barnes was admitted on April 12, 1990.  Dr. Koos ordered tests, which indicated that Barnes had suffered a drug overdose from ingesting a combination of phenobarbital, meprobamate, and Darvocet.  

Finally, Dr. Stephen Czarnecki testified as an expert witness for the Department.  Dr. Czarnecki is board certified in both cardiology and internal medicine.  Prior to testifying, he reviewed insurance claim forms submitted by plaintiff for the treatment of Christine Barnes, the prescriptions plaintiff issued to Barnes, and some of plaintiff's progress notes concerning Barnes.  

Dr. Czarnecki testified that in his opinion, the prescriptions did not conform to accepted medical standards.  He stated that the prescriptions were excessive in quantity, and many of them were inappropriate for Barnes' ailments.  

Specifically, Dr. Czarnecki testified that, all of the drugs prescribed by plaintiff are intended to be for short-term use.  A treating physician should use these drugs to alleviate the patient's pain while other treatments are used to address the cause of the pain.  Dr. Czarnecki further testified that simultaneous prescriptions for Darvocet and Tylenol-4 is "sort of gilding the lily."  Moreover, these medications should be used very cautiously when taken with phenobarbital or meprobamate.

Dr. Czarnecki concluded that, in his opinion, the continued prescriptions of Darvocet, Tylenol-4, meprobamate, and phenobarbital served no therapeutic purpose.  Also, attempts to refill such prescriptions too soon indicate that the patient may be developing an addiction to the medication, which should cause the patient's doctor to stop issuing the prescriptions.  

On November 27, 1991, the hearing officer released his report and recommendation.  The factual findings in the report show that Barnes received prescriptions from plaintiff for Darvocet N-100, meprobamate, phenobarbital, and Tylenol-4 on 122 occasions between February 1986 and September 1990.  The report stated that Barnes was a narcotic-dependent person and that plaintiff continued to prescribe controlled substances when he knew or should have know of her dependency.  The hearing officer found that the prescriptions were issued in a nontherapeutic manner with recklessness and disregard for the patient's well-being.  He further specifically found that all of the witnesses who testified during the hearing, except plaintiff, were credible.  Plaintiff's testimony was deemed not credible. 

The hearing officer found that the Department had proved counts XVII through XX by clear and convincing evidence.  As a result, he recommended that plaintiff's medical license be placed on probation for five years, that his controlled substances license be revoked, and that plaintiff be fined $20,000.  Both the Medical Disciplinary Board and the Director adopted the hearing officer's findings of fact and conclusions of law.  On May 13, 1992, the Director issued a decision imposing the sanctions recommended by the hearing officer.

On June 16, 1992, plaintiff filed an action for administrative review.  On May 31, 1995, the circuit court affirmed the Director's decision.  Plaintiff filed a motion for reconsideration that the circuit court denied on September 15, 1995.  Plaintiff filed a late notice of appeal, which this court allowed on November 8, 1995.

The prescriptions at issue in this case were written between 1984 and 1990.  The Illinois Medical Practice Act was amended in 1987, and, therefore, plaintiff was charged under the Act as it existed both before and after the amendment.  Nonetheless, the relevant provisions are substantively the same.  The 1987 statute provides:

"The Department may revoke, suspend, place on probationary status, or take any other disciplinary action as the Department may deem proper with regard to the license or visiting professor permit of any person issued under this Act to practice medicine, *** upon any of the following grounds: 

* * *

4.  Gross negligence in practice under this Act;

* * *

17.  Prescribing, selling, administering, distributing, giving or selfadministering any drug classified as a controlled substance (designated product) or narcotic for other than medically accepted therapeutic purposes."  225 ILCS 60/22(A) (4),(17) (West 1992), 

see also Ill. Rev. Stat. 1985, ch. 111, par. 4433 (4)(17) (containing substantively same provisions before 1987 amendment).  Likewise, the Illinois Controlled Substances Act provides that the Department may revoke or suspend a physician's controlled substances license for similar conduct.  720 ILCS 570/304 (West 1994). 

The hearing officer found the Department sustained its burden of proving by clear and convincing evidence that plaintiff wrote prescriptions in a nontherapeutic manner in reckless disregard for Barnes' well-being.  The Director adopted the hearing officer's finding and sanctioned plaintiff in a manner authorized by the Medical Practice Act.  

Upon plaintiff's action for administrative review, the burden shifted to plaintiff to show that the Director's decision was against the manifest weight of the evidence.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992).  A decision is contrary to the manifest weight of the evidence only where the opposite conclusion is clearly evident.  
Abrahamson
, 153 Ill. 2d at 88, 606 N.E.2d at 1117.  The 
Abrahamson
 court stated, "[t]he mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings. *** If the record contains evidence to support the agency's decision, it should be affirmed."  
Abrahamson
, 153 Ill. 2d at 88, 606 N.E.2d at 1117.  Plaintiff falls far short of this standard.

The record in this case contains ample evidence to support the Director's decision that plaintiff recklessly prescribed controlled substances for nontherapeutic purposes without regard for the safety of his patient and in violation of the Medical Practice Act and the Controlled Substances Act.  Every witness who testified, including plaintiff and his own expert, provided such evidence.  Plaintiff admitted that he issued these prescriptions.  He allowed Barnes to receive narcotic pain killers, tranquilizers, and sedatives in sufficient quantity and with sufficient regularity that Barnes was almost never without these drugs for a period of six years.  Plaintiff issued these prescriptions, most with at least one authorized refill, despite his admitted knowledge that Barnes was using the drugs too quickly.  

Each of the other witnesses who testified provided further support for the Director's decision.  Earnest Barnes stated that he called plaintiff and asked him to stop prescribing drugs to his wife because she was addicted to them.  Nonetheless, plaintiff continued issuing the prescriptions.  About six months later, plaintiff took an overdose of these drugs and spent four or five days recovering at St. Francis Hospital.  Even after the overdose, plaintiff continued prescribing the same drugs.

According to Dr. Czarnecki, plaintiff's treatment of Barnes failed to conform to accepted medical standards.  The drugs he prescribed are highly addictive and intended only for short-term use.  Also, narcotic analgesics should only be used in combination with tranquilizers in the exercise of extreme caution.  Dr. Czarnecki testified that, under the circumstances, it should have been clear to plaintiff that Barnes was developing a dependency on these drugs and using them for nontherapeutic purposes.  

Even plaintiff's own expert witness provided some testimony that supports the Director's decision.  Dr. Singleton admitted that circumstances such as those may indicate the patient is developing an addiction.

The standard of review controls this case.  The Department of Professional Regulation, its Medical Disciplinary Board, and its Director must be allowed to handle their own disciplinary matters in any manner authorized by law, and this court should not interfere with those decisions unless they are contrary to the manifest weight of the evidence.  Plaintiff can hardly point to any evidence in his favor, much less show that the opposite conclusion is "clearly evident."  See 
Abrahamson
, 153 Ill. 2d at 88, 606 N.E.2d at 1117.  

For the foregoing reasons, the decision of the circuit court of Cook County to affirm the Director's decision is affirmed.

Affirmed.

O'BRIEN, J., concurs.

CAMPBELL, P.J., dissents.

PRESIDING JUSTICE CAMPBELL, dissenting:

I respectfully dissent.  This court must decide whether the findings and decision of the Department are against the manifest weight of the evidence.  
Abrahamson v. Illinois Dept. of Professional Regulation
, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992).  This function is comparable to deciding as a matter at law 
whether there is competent evidence
 to support the judgment of a lower court.  
Fenyes v. State Emp. Retirement System
, 17 Ill. 2d 106, 111-12, 160 N.E.2d 810, 813 (1959).  Administrative decisions must also be supported by 
substantial evidence
.  
Carver v. Bond/Fayette/Effingham Regional Bd. of School Trustees
, 146 Ill. 2d 347, 363, 586 N.E.2d 1273, 1280 (1992); 
Ballin Drugs, Inc. v. Illinois Dept. of Registration and Education
, 166 Ill. App. 3d 520, 526, 519 N.E.2d 1151, 1156 (1988).

Dr. Caldwell was charged generally with negligence and gross negligence and specifically with prescribing controlled substances or narcotics for other than medically accepted therapeutic purposes with the intent of maintaining a person's physical or psychological addiction or dependence.  The Department's decision is largely based on Dr. Czarnecki's testimony, which Dr. Caldwell argues was legally insufficient to support the Department's action in this case.  The majority opinion ignores Dr. Caldwell's argument, but the argument merits consideration.

In an ordinary 
civil
 malpractice case, the plaintiff must show that the expert is a licensed member of the school of medicine about which he or she proposes to testify.  
Gill v. Foster
, 157 Ill. 2d 304, 316-17, 626 N.E.2d 190, 196 (1993).  The plaintiff need not show that the expert also 
specializes
 in the same area of medicine as the defendant doctor.  
Gill
, 157 Ill. 2d at 316, 626 N.E.2d at 196.  However, where a defendant doctor's 
criminal
 conviction rests on a finding that he has violated professional standards, the defendant has the right to be judged by the standards specific to his or her area of practice.  
People v. Albano
, 216 Ill. App. 3d 247, 264-65, 576 N.E.2d 998, 1009 (1991).

This case is neither a civil malpractice case nor a criminal prosecu­tion.  The question of the standard for competency of medical expert testimony before the Department is a question of first impression.

In an ordinary civil case, where the decision merely determines which party must bear an economic loss, there are no sound reasons for favoring one party over another, and the party with the burden of persuasion must prove his or her case by a preponderance of the evidence.  
Bazydlo v. Volant
, 164 Ill. 2d 207, 212-13, 647 N.E.2d 273, 276 (1995).  In some contexts, however, constitutional or policy considerations require the higher standard of proof by clear and convincing evidence.  
Volant
, 164 Ill. 2d at 213, 647 N.E.2d at 276.  

The burden of proof in this type of case is that of clear and convincing evidence.  This high standard of proof is justified by constitutional con­cerns.  The right to pursue a profession is a property and liberty interest protected by the Federal and Illinois constitutions.  
Collura v. Board of Police Com'rs of Village of Itasca
, 113 Ill. 2d 361, 369, 498 N.E.2d 1148, 1151 (1986); see also 
Smith v. Department of Registration & Education
, 412 Ill. 332, 340-41, 106 N.E.2d 722, 726 (1952).  Indeed, the right to pursue a career in medicine is one of the "fundamental rights of citizenship."  
Smith
, 412 Ill. at 341, 106 N.E.2d at 726.  Thus, in 
Albano
, where the doctor's liberty interest was at stake, the standard for competent testimony was also heightened.

In this case, the record shows that Dr. Caldwell is a general practi­tioner.  General practice is a recognized specialty.  
Albano
, 216 Ill. App. 3d at 264, 576 N.E.2d at 1008.  The record shows that Dr. Czarnecki's special­ties are cardiology and internal medicine.  Given the fundamental right at stake, I conclude that Dr. Caldwell must be judged by the standards applicable to a general practitioner, not to a cardiologist or internist.  Thus, Dr. Czar­necki's testimony cannot sustain the Department's decision in this case.

Moreover, even if the standard for competent expert testimony was not heightened, it is undisputed that Dr. Czarnecki's testimony was not based on an examination of Christine Barnes or a complete medical history, but on insurance claim forms, prescriptions and "some" progress notes.  Dr. Czarnecki admitted that not every diagnosis is put on the insurance claim forms and that there is no standard way of writing progress notes.  An expert interpretation of incomplete medical records adds little to the trier of fact's understanding of the facts or issues.  See 
Holston v. Sisters of the Third Order of St. Francis
, 165 Ill. 2d 150, 170-71, 650 N.E.2d 985, 995 (1995).  Indeed, the Department cross-examined Dr. Singleton to show the same flaws that affect Dr. Czarnecki's testimony.  Such evidence cannot be characterized as substantial.

In addition, an expert's opinion is only as valid as the bases and reasons for the opinion.  
Gyllin v. College Craft Enterprises, Ltd.
, 260 Ill. App. 3d 707, 715, 633 N.E.2d 111, 118 (1994).  In this case, Dr. Czarnecki testified that he "never said anything about individual prescriptions," but was looking at the "totality" of the situation, which he testified was a 10 year period.  Dr. Caldwell was not charged regarding a 10 year period.

The decision is also based on the finding that "Christine Barnes was a narcotic dependent person."  The Department could not have rationally decided that Dr. Caldwell intended to maintain Christine's addiction or dependence without such a finding.  Moreover, the finding underpins the decision that Dr. Caldwell was issuing prescriptions for non-therapeutic purposes.

The majority opinion states that:

"Dr. Czarnecki testified that under the circumstances, it should have been clear to plaintiff that Barnes was developing a depen­dency on these drugs and using them for non-therapeutic purposes."

Even assuming 
arguendo
 that such testimony was competent, it should be noted that the Department makes no such representation in its brief.  A review of the record indicates that Dr. Czarnecki's testimony contains no such state­ment.

Earnest Barnes testified that he told Dr. Caldwell that Christine was addicted.  Earnest Barnes is a lay witness.  When lay opinions are permitted, there must be a proper foundation establishing the witness's personal knowl­edge of facts that form the basis of his opinion.  
Hopkinson v. Chicago Transit Authority
, 211 Ill. App. 3d 825, 846, 570 N.E.2d 716, 730 (1991).

The record on appeal does not disclose a basis for the lay opinion.  Earnest Barnes testified that Christine occasionally appeared "tanked" on her medication, and that he took her to the hospital due to an overdose.  However, there is no evidence in this record linking these episodes of abuse to an addiction or dependency.  The majority opinion also faults Dr. Caldwell for continuing the prescriptions after the overdose, but cites no evidence that Dr. Caldwell was informed of the episode.

In sum, the evidence in this case was neither competent nor substantial on points crucial to the Department's decision.  Although the Department may have a legally sufficient case against Dr. Caldwell, it failed to present one.  Accordingly, I would reverse the decision of the circuit court.